## KAMINSKY v. TRANTHAM.

1. JUDGMENT—PURCHASER—SHERIFF'S SALE.—A purchaser of land at a sale, made under a junior judgment some months after service of summons to revive a senior judgment, and after expiration of lien of senior judgment, but before decree of revival, to which proceeding neither the purchaser nor the junior judgment creditor were parties, cannot refer his title to the senior judgment. MR. CHIEF JUSTICE McIVER *dissenting*.

2. FORECLOSURE DECREE—SALE.—A foreclosure decree which provides that the premises be sold, or "*so much thereof as may be necessary and sufficient* to pay the same," &c., necessarily implies that the officer making the sale has the right to have the land divided into convenient parcels.

Before ALDRICH, J., Camden, June, 1894.    Affirmed.

Action in foreclosure by Hyman Kaminsky, as assignee of John R. Falls, against W. D. Trantham and others, among them J. T. Hay, who was in possession of the premises.

The facts are fully stated in the following Circuit decree: The second exception of Hay is, "that the referee erred

28—45

in finding that the judgment of R. H. Pegues *v.* W. D. Trantham *et al.*, was not a lien upon the lands sold at the time of the sale under execution, and that the execution sale and the title of J. T. Hay thereunder should not be referred to said judgment; and in finding that the mortgage now held by H. Kaminsky is a lien upon the lands in the hands of J. T. Hay." Pegues recovered judgment against W. D. Trantham *et al.* on June 7th, 1879. A summons to revive this judgment was served on Trantham on May 25th, 1892, filed June 10th, 1893, and said judgment was "decreed" to be revived by the Court in June, 1893. The date of the execution and delivery of the bond and mortgage of Trantham to Falls is September 25, 1887. Kaminsky now owns them. On February 20, 1888, B. F. Creighton & Son recovered a judgment against Trantham. On April 24, 1888, W. D. Trantham executed and delivered the bond and mortgage now held by Baum Bros. On February 21st, 1891, Patterson, Renshaw & Co. recovered a judgment against W. D. Trantham. W. D. Trantham resided in Kershaw County; the judgment against him, the aforesaid mortgages, and the premises covered by same, are in said county. An execution was duly issued under the Patterson, Renshaw & Co. judgment and levied upon the land in issue on December 12, 1892, and, after due advertisement, said land was sold by the sheriff on salesday in January, 1893, to J. T. Hay, and the sheriff executed and delivered titles to Hay for said premises. Hay is now in possession of the same. Though the land was sold under the Patterson, Renshaw & Co. execution, the sheriff applied the proceeds of said sale to the judgment of B. F. Creighton & Son, which, as we have seen, is older than the Baum mortgage but junior to the Falls or Kaminsky mortgage and the Pegues judgment. The Code, section 309, amended by the act of 1885, 19 Stat., 229, provides that "a final judgment * * * shall constitute a lien upon the real estate of the judgment debtor in the county where the same is entered for a period of ten years from the date of

entry thereof." To the same effect was the act of 1873; 15 Stat., 498; Code of 1882, section 310, which was of force when the Pegues judgment was "entered" recovered, and the law as it then stood controls the said judgment. The Revised Statutes of 1893, section 728, the old act of 1839, 11 Stat., 55, directs that "the sheriff shall pay over the proceeds of sale of any real estate sold by him to any judgment having a prior lien thereon." Certainly, as between the Creighton & Son and Patterson, Renshaw & Co.'s judgment, the sheriff was bound to apply the proceeds of the sale to the Creighton & Son judgment. *Garvin* v. *Garvin*, 34 S. C., 398; *Henderson* v. *Trimmier*, 32 S. C., 270, and cases cited in Rev. Stat., under section 728. "The sale being for the benefit of the old judgment lien, the title under such sale is necessarily sustained by such older lien." *Garvin* v. *Garvin*, *supra*. "There being an unsatisfied judgment senior in date and rank, next a mortgage, and next a junior judgment, a levy, sale, and sheriff's conveyance made under the junior judgment. This sale being referable to the senior judgment, and the purchaser having, therefore, taken a good title, discharged of the mortgage lien, the mortgagee was enjoined from selling under his mortgage." *Henderson* v. *Trimmier*, 33 S. C., 270. The injunction was granted upon the ground that "the lien of the mortgage was divested," p. 273. It follows, therefore, that Hay holds the land divested of the lien of the Baum mortgage. Hay contends that his title should "be referred" to the Pegues judgment, and that his land is "divested" of the lien of the Falls or Kaminsky mortgage. This brings us to the proviso contained in the act of 1873, already referred to, which reads: "*Provided, however,* That the plaintiff in such judgment may, at any time within three years after its active energy has expired, revive the judgment with like lien as in the original, for a like period, by service of a summons on the debtor, as provided by law, requiring him to show cause, if any he can, at the next term of the Court for his county, why such judgment

should not be revived; and, if no good cause be shown to the contrary, then it shall be decreed that such judgment is revived according to the force, form and effect of the former recovery." Judgments never expire; they are entered up of record supposed to be perpetual, and upon them many rights and titles depend. As incident to a judgment upon a money demand, it has a lien which binds real estate for a certain fixed period; it authorizes the issuance of an execution for the collection of the money, and will take the proceeds of the sale of the premises bound, if sale under execution issued upon a junior judgment. The character and duration of these incidents in this State have, for many years, depended upon the statute law. What the *proviso* means by the "active energy" of a judgment is the existence of these incidents. When these incidents terminate, when the time fixed by the statute has passed, they are said to have "expired." The language of the *proviso* is not accurate, because that which has "expired" is dead, and the dead cannot, at least by legislation or the decree of any court of human origin, be revived. What the *proviso* means is, that the plaintiff, by pursuing its directions, can, after the ten years have passed, and within three years thereafter, renew the incidents of his judgment as they existed at its recovery. I cannot agree with counsel that the "revival" of the judgment must be referred back to the date of service of summons upon the judgment debtor, or the date when such summons is filed. I think a judgment is revived when so decreed by the Court. See *Alsobrook* v. *Watts*, 19 S. C., 544. A summons to revive a judgment, if served within the three years, may authorize a decree after the expiration of that time. *King* v. *Belcher*, 30 S. C., 381. The *proviso* requires the decree of the Court, not as a form, but as a decision that "no good cause" is "shown to the contrary." It was argued, that inasmuch as the *proviso* directs and the Court "decreed" that "the Pegues judgment is revived according to the force, form and effect of the former recovery," that the lien of said judgment now relates back to the former

recovery, and must be regarded as having had "active energy" all the time. To support this position counsel cites *Ex parte Witte*, 32 S. C., 226; *King v. Belcher*, 30 S. C., 381, and similar cases. There are certain expressions used in these cases, which, if taken disconnectedly, literally, and without reference to the facts in issue, might be construed as supporting counsel's position. If, however, these expressions are read as applying to the facts under consideration, it will be seen that, while perfectly correct and proper, they do not support counsel's position. In those cases the Court discussed the rights of the judgment creditor as against the judgment debtor and against junior lien creditors whose liens attached while the judgment retained its active energy. The question was, as between such parties, shall the original status, as it once actually existed, be restored? These cases do not apply to the facts under consideration in this action. The active energy of the Pegues judgment expired June 7, 1889. It was not revived until in June, 1893. Between these dates, and while the active energy of the Pegues judgment was gone, "expired," Patterson, Renshaw & Co. recovered their judgment, issued execution, the land was duly sold thereunder by the sheriff, and Hay's title acquired and perfected. Hay was a *bona fide* purchaser for value, and without notice of the proceedings to revive the Pegues judgment. Certainly neither Patterson, Renshaw & Co. nor Creighton & Son, the latter not even parties to the Baum suit, had notice of the revival proceedings, and Hay's title, being under their lien, is as strong as their title can make it. "When after the active energy has expired, and before judgment is revived, the claim of a *bona fide* purchaser without notice intervenes, a revival of the judgment can only operate prospectively, and does not avoid the title of the purchaser for value." *Woodward v. Woodward*, 17 S. E. Rep., 638. Neither Pegues nor any one representing his judgment nor the sheriff of Kershaw County are parties to these actions, and they cannot be affected by the judgment in these cases. *State ex rel. Jones v. Boles*, 13 S. C., 283. I conclude that

the title of Hay cannot be referred to the Pegues judgment, because it had no lien when he acquired his title; that the lien of the Falls or Kaminsky mortgage still binds the land, is not "divested," and, therefore, this exception is overruled.

In the portion of the decree ordering a sale, it is provided: "It is ordered, adjudged, and decreed, that the mortgaged premises described in the complaint in this action, or so much thereof as may be necessary and sufficient to pay the same," &c.

From this decree the defendant, J. T. Hay, appeals.

*Mr. J. T. Hay*, for appellant.

*Mr. J. D. Kennedy*, contra.

Oct. 19, 1895. The opinion of the Court was delivered by

Mr. JUSTICE GARY. This is an action to foreclose a mortgage on real estate, executed by the defendant, W. D. Trantham, to John R. Falls, on the 25th of September, 1887, and by him assigned to the plaintiff. The facts are fully set out in the decree of the Circuit Judge, which should be incorporated in the report of the case, and we will, therefore, make here only a brief statement of them.

The first lien upon the land was the judgment in favor of Pegues against the defendant, Trantham *et al.*, which was entered on the 7th of June, 1879. The next lien, in the order of date, was the Falls mortgage, which, as just stated, was executed on the 25th of September, 1887. The next was a judgment in favor of Creighton & Son against Trantham, which was entered on the 20th of February, 1888. The next was a mortgage held by the defendants, Baum Bros., executed by Trantham, on the 24th of April, 1888; and the next and last lien was a judgment in favor of Patterson, Renshaw & Co. against Trantham, entered 21st of February, 1891. Upon the judgment of Patterson, Renshaw & Co. an execution was duly issued and levied on the land in question, on the 12th of December, 1892; after

due advertisement the land was sold by the sheriff, on sale-day in January, 1893, and bid off by the appellant, Hay, who complied with the terms of sale, received title from the sheriff, and is now in the possession thereof. The proceeds of said sale were applied to the Creighton & Son judgment. The appellant, Hay, sets up, as a defense to this action, his claim of title acquired by him as purchaser at sheriff's sale, on the ground that the sale should be referred to the Pegues judgment, which bore date anterior to the Falls mortgage. The lien of the Pegues judgment expired on the 25th of September, 1889, ten years from the entry thereof, and a summons to revive the same was served upon the defendant, Trantham, on the 25th of May, 1892, but it was not filed until the 10th of June, 1893, when an order was passed to revive said judgment. His Honor, Judge Aldrich, in his decree, finds that neither Hay, Patterson, Renshaw & Co., nor Creighton & Son had notice of the proceedings to revive the Pegues judgment, and that Hay was a *bona fide* purchaser without notice. Hay was a stranger to the proceedings under which the land was sold by the sheriff.

The main question in the case is, whether the title acquired by the appellant at sheriff's sale can be referred to the Pegues judgment. The appellant's title cannot be referred to the Pegues judgment, unless it was a *lien* on the land when the sheriff sold it. Section 310 of the Code (1882) provided that "final judgments entered in any court of record in this State subsequent to the 25th day of November, 1873, shall constitute a lien upon the real estate of the judgment debtor in the counties where the same are entered for a period of ten years from the date of entry of such judgments. * * * *Provided, however,* That the plaintiff in such judgments may, at any time in three years after the active energy has expired, revive the judgment, with like liens as in the original, for a like period, by service of a summons on the debtor, as required by law, requiring him to show cause, if any he can, at the next

term of the court for his county, why such judgment should not be revived; and if no good cause be shown to the contrary, then it shall be decreed that such judgment is revived according to the force, form, and effect of the former recovery," &c. The case of *King* v. *Belcher*, 30 S. C., 381, decides that subdivision 2 of the amending act of 1885 was not retrospective so as to repeal the proviso of the section just quoted as to judgments entered after 1873 and before 1885. If Hay had purchased the land from Trantham, the judgment debtor, the case would be analogous to that of *Woodward* v. *Woodward*, 39 S. C., 259. In that case judgment had been entered against J. L. Woodward in favor of Marcus & Meyers on the 6th of October, 1880. On the 18th of August, 1891, J. L. Woodward, the judgment debtor, conveyed the land to D. Hagood Woodward, who had no notice of any proceedings to revive the judgment. The judgment was revived on the 9th of October, 1891; execution was issued thereon, and the land sold by the sheriff on saleday in January, 1892, when it was bid off by Croft & Meyers, to whom the sheriff made title. The Court held, that the title of D. Hagood Woodward was superior to that of Croft & Meyers, which it would not have done if it had thought that the judgment against J. L. Woodward was a *lien* on the land when he sold to D. Hagood Woodward. It cannot be contended for a moment that D. Hagood Woodward did not have notice of the judgment of Marcus & Meyers *v.* J. L. Woodward when he purchased the land, because the law implies notice of the judgment of the court. In the case of *Ellis* v. *Woods*, 9 Rich. Eq., 19, the Court says: "It was of record there this was implied notice. The proceedings of all our courts are public. Their records, as those of every public office where records are kept, are open to the inspection of every citizen of the country who has an interest or an inclination to inquire or investigate. The keepers of such records are bound to produce and exhibit them on demand. When one purchases land from a defendant in execution, he cannot protect himself

in the purchase, or set aside the *lien* of the judgment, on the plea that he had no notice of the enrollment of the judgment; or, if he purchase a negro or other chattel, he cannot avoid the prior claim of the plaintiff in the execution on the ground that he was not aware that such execution was lodged in the office of the sheriff. In these instances, the purchaser has implied notice. I think that public policy requires that the doctrine should be broadly declared that the records in all our courts should be implied notice in all cases, except where legislative acts have or shall modify or restrict the doctrine." When Hay purchased the land, he had implied notice of the Pegues judgment, and the law presumes he knew its legal effect, which was that it had lost its active energy and was no longer a lien on the land. Furthermore, when he purchased the land, he had no notice that proceedings had been, or would be, instituted to revive said judgment. He could not, then, in contemplation of law, have understood that the sale of the land by the sheriff was referable to the Pegues judgment. In this case it would be as inequitable to the rights of others to refer the sale to the Pegues judgment as it would have been in *Woodward* v. *Woodward* to have held that the judgment against J. L. Woodward was a subsisting lien on the land when purchased by D. Hagood Woodward. In each of these cases the sale took place after the expiration of ten years from the entry of the judgment, but within the three years allowed for reviving the same; and in neither of the cases did the purchaser have notice of any proceedings to revive the judgment. Under these circumstances, the other parties interested had the right to presume that Hay was not buying the land under the Pegues judgment, but without reference to that judgment. Public policy and the spirit of the law aim at certainty, and that, as far as possible, the rights of parties at the time of a sale under judicial process should be fixed, and not dependent upon the steps which a judgment creditor might see fit to take after such sale. Hay's title to the land should not be

dependent upon the revival of the Pegues judgment after the sale of the land by the sheriff. Such uncertainty would necessarily work injustice to some of the parties in interest. The views which we have just announced are in harmony with the policy outlined by our law-makers, as shown by subdivision 2 of the amending act of 1885, incorporated in section 309 of the Code, which provides that "a final judgment may be revived at any time within the period of ten years from the original entry thereof by the service of a summons upon the judgment debtor * * * to show cause, if any he or they may have, why such judgment should not be revived; and if no good cause be shown, it shall be decreed that such judgment is revived. And such judgment shall thereupon constitute a lien upon the real estate of the judgment debtor then owned, or thereafter to be acquired, by him, in the county where the judgment is entered, for a period of ten years from the entry of such decree; but such lien shall not revert back to the date of the original entry of such judgment," &c.

The second exception complains of error on the part of the Circuit Judge in not directing that the mortgaged premises be divided and sold in convenient parcels. In providing for a sale of the land, the Circuit Judge ordered that the mortgaged premises be sold, *or so much thereof as may be necessary and sufficient* to pay the sum of $1,213.70, the amount due under the mortgage by Trantham to plaintiff, &c. This necessarily implied that the officer making the sale has the right to have the land divided into convenient parcels, and it is his duty to have regard, in making such division, to the rights of all parties in interest.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE MCIVER, *dissenting.* This was an action to foreclose a mortgage on real estate, executed by the defendant, W. D. Trantham, to one John R. Falls, on

the 25th of September, 1887, and by him assigned to the
plaintiff; but when this assignment was made or when the
present action was commenced, nowhere appears in the
"Case," though both of these dates are stated in the argu-
ment of counsel for respondent, of which, as has been fre-
quently held, this Court cannot take notice. The appellant,
Hay, sets up as a defense to this action, a claim of title,
acquired by him as purchaser, at sheriff's sale, of the mort-
gaged premises, under a judgment in favor of Pegues against
defendant, Trantham, anterior in date to the Falls mort-
gage, and superior in lien to said mortgage, as well as all
the other liens upon said land. For a proper understand-
ing of the question raised by this appeal, it is necessary to
state, and keep in mind, the dates of these several liens, as well
as the several proceedings thereunder. The "Case" shows
that the first lien upon the land in controversy was the
judgment in favor of Pegues, which was entered on the 7th
of June, 1879, upon which summons, to revive the same,
was served on the defendant, Trantham, on the 25th of May,
1892, but the same was not filed until the 10th of June,
1893, when an order reviving the same was taken. The
next lien, in the order of date, was that of the Falls mort-
gage, which, as above stated, was executed on the 25th of
September, 1887. The next was a judgment in favor of
Creighton against Trantham, which was entered on the 20th
of February, 1888. The next was a mortgage now held by
defendants, Baum Bros., executed by Trantham on the 24th
of April, 1888. And the next and last lien, so far as ap-
pears, was a judgment in favor of Patterson against Tran-
tham, entered 21st of February, 1891. Upon this last
named judgment an execution was duly issued and levied
upon the land in question, on the 12th of December, 1892,
and, after due advertisement, the land was sold by the sheriff
on saleday in January, 1893, and bid off by the appellant,
Hay, who complied with the terms of the sale, received title
from the sheriff, and is now in possession thereof. Though
the land was sold under the Patterson execution, the sheriff

applied the proceeds of the sale to the Creighton judgment, which, as we have seen, was anterior in date to the Patterson judgment and the Baum Bros. mortgage, but junior in date to the Falls mortgage and the Pegues judgment. So, that the real question in this case is, whether the title acquired by the appellant at the sheriff's sale can be referred to the Pegues judgment; for, if so, then the appellant has the superior title.

Ever since the case of *Vance* v. *Red*, 2 Spears, 90, and even before, it has been uniformly held, that "it is of no consequence under what named execution or judgment the sheriff sells a defendant's property, the sale is, in virtue of all existing liens of the kind;" and the case goes on to hold that, even when the preceding execution, to which the sale was referred, was marked "Wait orders," the same rule would apply; the Court saying that, "the intention of such an order is plainly to suspend the active proceeding of the sheriff. It could, at most, amount to the suspension or withdrawal of the execution, not of the lien of the judgment." This doctrine has been repeatedly recognized since. *Agnew* v. *Adams*, 17 S. C., 364; *Henderson* v. *Trimmier*, 32 S. C., 269, and *Garvin* v. *Garvin*, 34 S. C., 388. So that the question is narrowed down to the inquiry, whether the Pegues judgment was a lien on the land at the time of the sale by the sheriff, under which appellant claims; for, if it was, then, unquestionably, under the authorities above cited, as well as under the express provision of section 744 of the Revised Statutes of 1893, the appellant has the superior title—for that section requires the sheriff to pay over the proceeds of the sale of any real estate sold by him "to any judgment having prior lien thereon;" which necessarily implies that the sale shall be referred to such judgment. Now, the Pegues judgment having been recovered in 1879, prior to the act of 1885, it must be governed by the law as it stood at the date of the recovery of the judgment. *King* v. *Belcher*, 30 S. C., 381. Under the law as it then stood (section 310 of the Code of

1882), this Pegues judgment undoubtedly was a lien on the real estate of the defendant, Trantham, for a period of ten years from the date of its entry—7th of June, 1879—and was, therefore, unquestionably a prior lien on the land in question at the time when the Falls mortgage was given, viz: 25th of September, 1887, which was, therefore, given subject to such prior lien. The inquiry, then, is, whether such prior lien was afterwards lost by efflux of time or otherwise? While it is true that, by the section of the Code just cited, the lien of the judgment was limited to ten years, yet such limitation was accompanied with the proviso: "That the plaintiff in such judgment may, at any time in three years after its active energy has expired, revive the judgment, with like lien as in the original, for a like period, by service of summons on the debtor, as provided by law, requiring him to show cause, if any he can, at the next term of the Court for his county, why such judgment should not be revived; and, if no good cause to the contrary be shown, then it shall be decreed that such judgment is revived according to the force, form and effect of the former recovery." It will be observed that the phraseology of this proviso is not without significance. The plaintiff in such judgment is permitted, at any time within three years "after its *active energy* has expired"— *not* after *the lien* of the judgment has expired—to revive the judgment "with like lien" as in the original, which necessarily means with a lien from the date of entry, by the service or a summons to show cause; and if no sufficient cause to the contrary be shown, then it shall be decreed— *not* that the judgment *shall be* revived, but that it "*is* revived according to the force, form and effect of the former recovery;" which, of course, means with a continuous lien from the date of the original entry of the judgment. The obvious purpose of the legislature in using the language above referred to was to enable the judgment creditor, at any time within three years after the judgment had lost its active energy and had become dormant, that is, incapable of

enforcement by execution, to revive its active energy, with the same lien as it originally had—not to give it any *new* lien—and the object of requiring the summons to show cause was to enable the judgment debtor, if he could, to show that such judgment had been satisfied or otherwise extinguished. In this case it appears that the summons to show cause why the Pegues judgment should not be revived was issued 'and served on the judgment debtor, Trantham, on the 25th of May, 1892—within three years after the expiration of ten years from the date of the original entry of the judgment; and the fact, which likewise appears, that the order declaring that the judgment *is revived*, was not made until the 10th of June, 1893, after the expiration of the three years, cannot affect the question, as has been held in at least three cases—*Adams* v. *Richardson*, 32 S. C., 139; *Wood* v. *Milling, ibid.*, 378, and *Leitner* v. *Motz, ibid.*, 383.

It seems to us, therefore, that the Pegues judgment being confessedly a lien upon the mortgaged premises at the time the Falls mortgage was executed, retained its priority as such up to the time of the sheriff's sale at which the appellant purchased, and that, by such purchase, the sale being referable to the Pegues judgment, the appellant acquired a title superior to the lien of such mortgage, and that the Circuit Judge erred in holding otherwise.

It only remains to consider the case of *Woodward* v. *Woodward*, 39 S. C., 259, which, it is supposed, is in conflict with the conclusion which we have reached. That case differs materially from this, in the fact that there the question was as to the rights of a third person, who had become the *bona fide* purchaser of the land, for value, without notice, after the judgment under which the other parties claimed had lost its active energy, and before it had been revived, and, so far as appears from the case, before any proceedings to revive the judgment had been instituted. In that case a judgment had been entered against one J. L. Woodward, on the 6th of October, 1880. This judgment was revived on the 9th of October, 1891, and execution

having been levied thereon, the land in question was sold by the sheriff on the saleday in January, 1892, and bid off by Croft and Meyer. In the meantime, however, the judgment debtor, on the 18th of August, 1891, sold the land to one D. Hagood Woodward, and the question was, who had the superior title? The Court held, that D. Hagood Woodward, having bought the land from the judgment debtor, after the expiration of the ten years from the entry of the judgment, without any notice of any proceeding to revive the judgment, had the superior title. But the Court, while recognizing the previous cases of *King* v. *Belcher, supra*, and *Ex parte Witte Bros., In re. Latham* v. *Moore*, 32 S. C., 226, rested its conclusion upon the ground that the case of Woodward *v.* Woodward presented an entirely new question, unaffected by previous decisions, growing out of the fact, that there the question was as to the rights of a *bona fide* subsequent purchaser. But, what is more important, Mr. Justice McGowan, in delivering the opinion of the Court, after quoting the authorities elsewhere to show that the rights of innocent third parties should be protected, explicitly recognizes the conclusion which we have adopted, by using the following language: "It seems that the doctrine as to the effect of a revival, under the circumstances stated, *leaves untouched* the rights of the parties to the judgment, *and the relative rank of all liens acquired before the judgment lost its active energy*, and protects only the rights of innocent third parties" (italics mine). So that the case of *Woodward* v. *Woodward, supra*, instead of being in conflict with the views which I have adopted, expressly recognizes them in a case like the present; for it is conceded that the question here is as to the relative rank of liens acquired before the Pegues judgment had lost its active energy, and does not affect the rights of any innocent third party.

For these reasons, I am unable to concur in the conclusion reached by the majority of the Court; and, on the contrary, think that the judgment of the Circuit Court should be reversed, and that the complaint, in so far as it seeks a

foreclosure of the mortgage on the land bought by the appellant, ·Hay, at the sheriff's sale, should be dismissed.