## 13011

### PRUDENTIAL INSURANCE CO. OF AMERICA v. LEMMONS, ET AL.

(155 S. E., 591)

October, 1929.

*Messrs. C. Yates Brown, William C. Wolfe* and *Thomas & Lumpkin,* for appellant,

*Messrs. Butler & Hall* and *Dobson & Dobson,* for respondents,

October 25, 1930.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH.

On the 23d day of April, 1926, the respondent, Mrs. Mayme Lemmons, individually and as guardian of her two minor children, to secure a loan for $5,000.00, executed and delivered to the appellant a mortgage of a valuable tract of land consisting of 250 acres, lying about three miles west of the town of Gaffney, and fronting a distance of about one-half mile on the paved state highway designated as No. 11.

Upon default, the appellant brought this action on the 1st day of May, 1929, to foreclose the said mortgage, making the Southern Bond & Mortgage Company, Inc., a junior mortgagee, and certain judgment creditors, parties thereto, representing an aggregate indebtedness of about $12,000.00.

Beside the essential and merely formal provisions therein, the decree of foreclosure, in regard to the terms and conditions of the sale, provided (1) that for the purpose of the sale the land be subdivided into lots containing from 25 to 50 acres each as the judgment of the Clerk of Court and the surveyor appointed by him deemed best; (2) that the said mortgaged property be thus sold by lots to the highest bidder for one-third cash, the balance payable in one and two years from date, the credit portion to be secured by note and mortgage of the purchased premises with interest and attorney's fees provisions; (3) that, if a sufficient number of lots or parcels are sold to pay the amounts due the parties named therein, with taxes, costs, and expenses, the remaining lots to be withdrawn from sale; (4) that, if the mortgages taken to secure the credit portion of the mortgaged property should fail to produce funds to pay said debts, the remainder of the land to be sold under execution at a later date to pay the deficiency, the lien of the judgment and decree to remain in full force and effect until the amount ascertained to be due to all parties be paid in full; and (5) that the respondent have a first lien on the proceeds of securities given to secure the deferred payments.

All parties to the action seemed to be satisfied with these terms and conditions of sale except the appellant, who urges that such decretal provisions (1) impair the obligation of the mortgage contract, (2) are unreasonable, and (3) are not warranted by any equities disclosed in the record.

The only issue, therefore, presented to the Circuit Judge, and to this Court on the appeal, relates to the method and terms of sale ordered, and ultimately involves the question as to whether the land should have been sold as a whole and for cash.

There cannot be the slightest doubt that a mortgage of real estate in this State is not a conveyance of the legal title to the property. The mortgagor remains the owner of the property, and the mortgage only constitutes a

lien thereon for the satisfaction of the mortgage debt. It logically follows, without the slightest impairment of the mortgage contract, that he is not entitled to a sale and probable sacrifice of the whole mortgaged premises if the mortgage debt can be satisfied in full by a sale of a part thereof. All that he can justly require is that his debt be paid out of the mortgaged property or as much as may be necessary to fully satisfy his secured obligation.

It has therefore been the uniform practice, as well as a generally sanctioned discretionary power of a Court of equity, in cases of the foreclosure and sale of real property mortgages, to order the whole mortgaged property sold, or in certain cases so much as may be necessary to satisfy the mortgage debt, costs, and expenses, and for this purpose may direct that such lands be divided and sold in lots or separate parcels. *Ross v. Carroll,* 33 S. C., 202, 11 S. E., 760. *Kaminsky v. Trantham,* 45 S. C., 393, 23 S. E., 132, 135; *Barnwell v. Marion,* 60 S. C., 314, 38 S. E., 593, 19 R. C. L. §§ 387, 388.

In 19 R. C. L. § 387, in a discussion of this generally sanctioned practice of the Court, it is declared: "In general, it may be said that mortgage sales will be controlled by the Court so that no injustice will be done to either party, and a part or the whole of the property sold as may best conduce to that end, and the circumstances of each particular case must be considered in determining in what manner the sale should be made."

In Section 388 of the same work occurs the following statement of the rule: "Where land that is to be offered for sale on the foreclosure of a mortgage consists of several distinct lots or tracts, the land should usually be offered for sale in parcels and not *en masse,* and it has been said that if the land consists of a single tract or body, and is susceptible of division without injury and the sale of the whole is not necessary to satisfy the debt, it should be divided, and

only so much of it offered at one time as may be necessary to satisfy the judgment, interest and costs."

In the case of *Kaminsky v. Trantham, supra,* the Circuit Judge was charged with error in not directing the mortgaged premises to be divided and sold in convenient lots. The decree of foreclosure and sale directed that "the mortgaged premises be sold, or so much thereof as may be necessary and sufficient to pay   *   *   *   the amount due under, the mortgage." The Court held that this direction "necessarily implied that the officer making the sale has the right to have the land divided into convenient parcels, and it is his duty to have regard, in making such division, to the rights of all parties in interest."

In 27 Cyc., page 1651, it is stated, in a consideration of this power of the Court to order the sale of mortgaged land in separate parcels, rather than as a whole, that such power should be exercised, especially where there are infant defendants and it is shown that the sale in parcels would be to their advantage.

It is likewise beyond question that, in the absence of some statutory requirement, or some provision of the mortgage contract to the contrary, the discretionary power of a Court of Equity to order the sale of mortgaged premises for part cash and part on time, the credit portion to be secured by the note or bond and mortgage of the purchaser, was recognized and has been uniformly sanctioned in this State from an early period (*Lowndes v. Chisolm,* 7 S. C. Eq. [2 McCord, Eq.], 455, 16 Am. Dec., 667; *Berry v. Caldwell,* 121 S. C., 425, 114 S. E., 405), and such seems to be the generally recognized practice (27 Cyc., page 1699; 42 C. J., 202).

In the case of *Lowndes v. Chisolm, supra,* at page 464 of 2 McCord, Eq., the Court at an early period thus states the recognized rule: "The sureties in this case had a right to rely and no doubt did rely on the mortgage as operating as a counter security in their favour, to the amount of what-

ever the land would bring at public sale; * * * for as
all contracts are supposed to be made in reference to the law
of the land, they had a right to calculate that, if their principal failed to pay the debt, the mortgage would be foreclosed according to law; and in such case it was well known,
that the property would be sold at public sale and on a reasonable credit; for notwithstanding all that has been said
against the exercise of this power by the Court of Equity
of 'selling on credit,' it seems to be now too well established
to admit of any doubt; and therefore both the defendants
and complainants may be considered as contracting with
reference to this power of the Court—a power which it is
not pretended the Court can exercise to an arbitrary extent,
any more than any other discretionary power (of which
there are an infinite number vested in all the higher Courts
both of law and Equity)."

In the case of *Berry v. Caldwell, supra,* at pages 425, 426
of 121 S. C., 114 S. E., 405, 408, an unqualified recognition
of the sanctioned practice is indicated by the Court in the
following language: "As to not ordering the real estate to
be sold for cash, the power of the Court of Equity to fix
terms of sale upon a reasonable credit would seem too well
settled to require the citation of authority. See Jones on
Mortgages, § 1615; *Lowndes v. Chisolm,* 2 McCord, Eq.,
455, 16 Am. Dec., 677."

The case of *Peeples v. Snyder,* 141 S. C., 152, 139 S. E.,
405, 410, strongly relied on·by the appellant, is not in conflict with this generally recognized practice in this State. In
fact, the ground upon which the Court's disapproval in that
case of "terms of one-fourth cash and one-fourth each year
for three years, instead of a sale for cash" was based embodies a clear recognition of the rule as declared in all the
prior cases. In reaching its conclusion, the Court, so far
from indicating a repudiation of the principle, simply held
that its requirements were not met under the facts and circumstances of that case, as the record did not "show the

existence of any equities which would warrant postponement of any payment of a part of the purchase price."

It is therefore plain that the broad discretionary power of the Court of Equity to provide such terms in a decree of foreclosure and sale of real property is not only free from constitutional objection as urged, but is well supported by sound reason and unquestioned authority, and should be exercised when the facts and circumstances of the particular case, having due regard to the rights and interests of all parties, in good conscience and sound judicial discretion, warrant such action.

In this case the interest of the two minor children who lived on the premises, with their mother might well have become a matter of some concern to the Court, with entire recognition and enforcement of all the contract rights of the mortgagee, in its very careful consideration of all the surrounding facts and circumstances, for the purpose of having the land sold to the best advantage and with due regard to the "rights of all parties in interest." The advantageous location of the land on a paved highway, not only increasing its value as a whole, but probably making smaller lots more desirable and their aggregate value substantially in excess of that of the land as a whole, the absence of complaint by all other mortgage and judgment creditors, the fact that the appellant's mortgage indebtedness, namely, $5,750.57, including attorney's fees, at the date of the decree, did not exceed one-tenth of the estimated value of the land, the great financial stringency and business depression that obtains, which would probably result in a deplorable sacrifice of this property if ordered for sale as a whole and for cash, and other circumstances fairly inferable from the record, in the absence of statutory requirement or specific mortgage provision, might well have influenced the judgment of the able and long-experienced Circuit Judge, who in consequence of residence and observation was no doubt familiar with the general financial and economic con-

ditions prevailing in the section, in decreeing the terms and conditions imposed. Certainly, there is nothing in the record submitted to indicate such an abuse of discretion in the particulars urged as to warrant interference by the Court.

The judgment of the Court is that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.