13763

FEDERAL LAND BANK OF COLUMBIA v. WELLS *ET AL.*

(172 S. E., 707)

Before STOLL, J., Clarendon, May, 1932.

4

*Messrs. Dinkins & Stukes,* for appellants,

*Mr. Charlton DuRant,* for respondent,

February 1, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for the foreclosure of a mortgage of real estate. It appears from the record that one John W. Wells owned in fee simple a tract of land in Clarendon County contining 380 acres. By his will, dated January 2, 1875, he devised this land, referred to by him as his Rich-

ardson plantation, to "Amelia Gaillard and her two children, Nathan Wells and Edwin Wells and to the lawful issue of their bodies * * * to be kept by Amelia Gaillard and used for the common good of herself, Nathan and Edwin, until the younger child Edwin becomes to the age of twenty-one years. And then and at that time to be equally divided between the three, Amelia, Nathan and Edwin." He further provided, however, that "if either Amelia, Nathan or Edwin should die leaving no lawful issue of their bodies said land to be divided between the surviving two, if either two of these legatees should die leaving no lawful issue of their bodies the whole shall belong to the survivor. And in the event of the death of all three, Amelia, Nathan and Edwin leaving no lawful issue of their bodies, before or after the time for division, I desire and will the whole of the above described estate to John O. Brock and his heirs. * * * All of the above described property both real and personal shall not be subject to any debts, contracts or dispositions of either of the above named persons Amelia, Nathan and Edwin, before nor after the division."

Amelia died in 1887 and the testator in 1890. At that time Edwin was married and had one child, John Wells. Nathan was also married and had several children. The will was proved in solemn form, and its probate was affirmed by this Court in an opinion reported in 37 S. C., 348, 16 S. E., 38. Thereafter Nathan and Edwin—Edwin then being more than thirty years of age—divided the lands between themselves; Nathan in 1902 making a deed to Edwin to a tract of 121 acres on which the homestead of John W. Wells was situate. On May 18, 1925, Edwin, who then had several living children, executed a mortgage in favor of the plaintiff bank covering this tract of 121 acres and another tract of 103 acres which he had acquired otherwise. The mortgage was given by him to secure the payment of his promissory note for $7,400.00. In February, 1932, Edwin died, leaving surviving him his widow and seven children and three chil-

dren of two predeceased daughters, all of whom are appellants in this case. On May 9, 1932, this action for foreclosure was begun. All the defendants defaulted except the mortgagor's infant children and grandchildren; a formal answer being filed on their behalf by their guardian *ad litem*. After a decree of foreclosure was rendered and the property advertised for sale, the appellants, through their present counsel, obtained an order of the Court setting aside the decree and permitting them to answer. They pleaded, by way of defense, that the will of John W. Wells created in Edwin Wells only a life estate in the 121-acre tract of land, and that the land passed at Edwin's death to his children in fee. They further alleged that a sale at the time the answer was served would be oppressive and inequitable and should not be had except on a December or January sales day.

The report of the special referee, to whom the case was referred, was confirmed by his Honor, Judge Stoll, who held that "Edwin Wells was * * * the owner of a fee conditional in the first tract (121 acres), described in the complaint which ripened into a fee simple on the birth of issue," and ordered that the mortgaged premises be sold on October 2, 1933.

The appeal presents two questions: (1) Was the Circuit Judge in error in his construction of the will of John W. Wells? (2) Did he abuse his discretion in ordering a cash sale of the mortgaged premises and in decreeing that the two tracts of land be sold together as one?

As to the first question, we think that the cases cited by the special referee in his report, especially *Whitworth v. Stuckey,* 1 Rich. Eq., 404, and *Bethea v. Bethea,* 48 S. C., 440, 26 S. E., 716, fully sustain the conclusion reached by the Circuit Judge, making further citation of authority unnecessary. Clearly, the word "issue" was used by the testator in its technical sense as a word of limitation. Edwin Wells therefore took a fee-conditional estate which became on the birth of issue a fee simple absolute for the purposes of alienation, forfeiture, or to

charge. The appellants rely strongly on *McWhite v. Roseman,* 114 S. C., 177, 103 S. E., 586. In that case the Court declared that a fee conditional was not created by the provisions of the will before it for the reason that the words "bodily heirs" were used by the testator as synonymous with the word "children." It then observed that it could not be held that the tenant took a fee conditional without destroying the express provision of the will, "land not to be sold."

The appellants contend that the provision in the will now before this Court, that the property described should not be subject to any debts, "contracts or dispositions of either of the above named persons Amelia, Nathan and Edwin, before nor after the division," is indicative of the intention of the testator, following the decision in the *McWhite case,* to give no more than life estates to these devisees. It is to be observed, however, that the Court in the *McWhite case,* for reasons aside from its observation referred to, held that a fee conditional was not created under the provisions of the will there considered, and we do not think that it may soundly be held that what was said was intended to change or affect the rule of law announced in numerous decisions with respect to restraints imposed, either by will or deed, on the alienation of estates in fee. In the case at bar, as we have pointed out, a fee simple conditional was expressly created by the language of the testator, with the possibility of ripening into a fee simple absolute for the purpose of alienation, etc.

In addition to the cases cited by the referee, the somewhat later case of *Turner v. Guest,* 117 S. C., 14, 108 S. E., 177, is in point. In that case we find (quoting syllabus) : "A clause in a will devising real estate after the death of the life tenant to testator's four sons for their use and possession during their natural lifetime, but not to be subject to their debts or to be sold by them and to descend to their heirs, gives to the sons a fee simple." See, also, *Heath v. Bishop,* 4 Rich. Eq., 46, 55 Am. Dec., 654.

As to the second question, the time and terms of the sale are matters largely in the discretion of the Circuit Judge. In *Prudential Insurance Company v. Lemmons*, 159 S. C., 121, 155 S. E., 591, 594, the Court said: "The broad discretionary power of the Court of equity to provide such terms in a decree of foreclosure and sale of real property is not only free from constitutional objection as urged, but is well supported by sound reason and unquestioned authority, and should be exercised when the facts and circumstances of the particular case, having due regard to the rights and interests of all parties, in good conscience and sound judicial discretion, warrant such action."

Appellants contend, however, that Judge Stoll erroneously exercised his discretion (a) in ordering a "sale for cash in these distressful times," and (b) in decreeing a "sale together as one of two separate farms, not even adjoining, one of which constitutes the homestead of some of the appellants, some of whom are infants."

As to contention (a), it is conceded to be the general policy of the plaintiff, the Federal Land Bank, to make loans to owners of farms on very liberal terms. It is also conceded that the lands taken over by the bank under foreclosure of mortgages held by it on such farms are resold on easy terms—that is to say, the purchaser makes only a small cash payment on the purchase price, credit being extended by the bank for payment of the balance in installments over a period of years. T. H. Stukes, Esq., one of counsel for appellants, says, in an affidavit filed in the case, that he has been informed by an agent of the plaintiff that "sales are made for as little cash payment as ten per cent of the purchase price and the balance payable in as many as twenty equal annual installments with interest at the rate of six per cent per annum upon such deferred payments." There appears in the record also an affidavit of A. B. Merritt, treasurer of the Federal Land Bank of Columbia, in which he says that it is the policy of the bank not to deliver a deed

for property sold by it unless and until at least 20 per cent. of the purchase price has been paid, and that, while credit terms are extended in some cases for as long as twenty years for payment of the balance owing, such terms are given only when the amount of the unpaid debt is large, and that in the usual case they are extended for a much shorter period of time.

While no hard and fast rule can be laid down that would be applicable generally, each case being governed by its own peculiar facts, it seems to us that, in view of the general policy of the plaintiff, above recited, it should not ask for a sale for cash under present conditions, and that the sale should not be so made.

As to contention (b), we think that the appellants should be given an opportunity to purchase, if they so desire, any one of the tracts of land, or farms, without being compelled to buy them both. This in no way could be objectionable to the respondent and might be of some advantage to the appellants.

The judgment of the Court, therefore, is that the sale of the mortgaged premises on sales day in October, 1933, be set aside, that the lands be readvertised for sale, and that the tracts be sold separately, and not otherwise; that the terms of such sale shall be as follows: Twenty per cent. of the purchase price to be paid cash, the balance, eighty per cent., to be paid in ten equal annual installments, interest on such deferred payments to be at the rate usually charged by the respondent in such transactions, and that the payment of such unpaid balance to be secured to the respondent by execution and the delivery to it, by the purchaser, of a mortgage or mortgages of the property so sold and bought; the purchaser to execute in favor of the respondent any other papers, such as notes or bonds, that may be necessary to complete the transaction, the mortgages, notes, and bonds so executed to contain any or all of the usual provisions found in such papers. To this extent, and in these respects,

the Circuit decree is modified; in all other respects it is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.