GADSDEN v. DESPORTES.

1. RULE IN SHELLEY'S CASE.—The residuary clause of a will was as follows: "I will and direct that all the rest, residue, and remainder of my estate be divided by my executors into five equal parts or portions; one of which I devise, give, and bequeath to each of my daughters, for and during the term of her natural life, to and for her sole and separate use, benefit, and behoof, and in no wise to be subject or liable to the debts, contracts, or encumbrances of any husband; and at her death to the issue of her body then living. In case either of my said daughters shall die without leaving issue of her body then living, all of the property above given and devised

or bequeathed to her shall be equally divided among her surviving sisters, to and for their sole and separate use, benefit, and behoof respectively, for and during the term of their natural lives respectively, precisely in all respects as the original share or portion above devised and bequeathed to them respectively, and at their several and respective deaths to the issue of their bodies who may be then living." *Held,* that the rule in Shelley's case was inapplicable to this devise, and that a tract of land, which fell on division to the share of one of testator's daughters, and upon her death without issue was sold under proceedings for partition between her surviving sisters, the living children of such sisters not being parties, vested in the purchaser an estate only for the life of these sisters respectively, and upon the death of one of them, her surviving issue were entitled to recover their share.

2. CASE CRITICISED.—This case distinguished from Hay *v.* Hay, 3 Rich. Eq., 387, and the language used in that case shown to have been afterwards disapproved in Hay *v.* Hay. 4 Rich. Eq., 378.

3. THE RULE IN SHELLEY'S CASE is inapplicable to an equitable estate for life with a legal estate in remainder, as was the case here after the death of the first daughter without issue.

4. LIFE TENANT—RIGHTS OF REMAINDERMEN.—*It seems* that nothing done by a life tenant, and no order in a cause to which the remaindermen were not parties, can affect the legal rights of the remaindermen.

5. APPEALS.—A point decided by the Circuit decree, and not questioned by exception taken, cannot be considered on appeal.

6. BETTERMENT ACTS—CLAIMANT.—Under the betterment laws of this State, a defendant in possession can claim compensation only to the extent that the land has been increased in value by the improvements made by himself, and cannot make claim for improvements made by his vendor.

Before IZLAR, J., Fairfield, June, 1892.

This action was commenced on April 25, 1891. The Circuit decree was as follows:

The plaintiffs, who are the children of Regina Gadsden, deceased, a daughter of the late Osmund Woodward, deceased, bring this action to recover from the defendant, Ulysse G. Desportes, the possession of one undivided one-fourth of a certain tract or parcel of land, containing eight hundred and forty-eight acres, situated in the county and State aforesaid, and particularly described in the complaint, and for other relief. The defendant, Ulysse G. Desportes, by his answer, admits that he is in the exclusive possession of said land, and is re-

ceiving the rents and profits therefrom, and denies that the plaintiffs are entitled to an undivided one-fourth interest therein, under the will of Osmund Woodward, deceased, and that his codefendants are interested in said lands as contingent remaindermen under said will, but on the contrary avers that he has a title to said lands by, from and under the purchase of the same at the sale thereof for partition under the suit referred to in the fifth paragraph of the said complaint. And as a further defence, sets up a claim for improvements made to said land. The other defendants, who are the grand-children and great-grand-children of the late Osmund Woodward, deceased, do not contest the claim of the plaintiffs to an undivided interest in said land, or their right to recover the same.

A jury trial having been waived, the case was heard by me at the June, 1892, term of the Court of Common Pleas on the pleadings and testimony taken and reported by W. D. Douglass, Esq., special referee. Full argument was had on all the issues raised in the cause. The facts established by the evidence, which are necessary to be stated and about which there is no dispute, are as follows: Osmund Woodward, late of the county of Fairfield, in the State aforesaid, in and by his last will and testament, in writing, bearing date the 25th day of March, 1854, among other things, devised and bequeathed certain real and personal property to his five daughters, as follows: "Item 4. I will and direct that all the rest and residue and remainder of my estate, both real and personal, of every kind and description, including all the lands and all the negro slaves and their increase, which may be in possession of my children at the time of my decease, as a loan from me, be divided by my executors into five equal parts or portions—one of which I give, devise and bequeath to each of my daughters, namely: Jemima Harrison, Sarah Owens, Amanda Heath, Rebecca Buchanan and Regina Woodward, for and during the term of her natural life, to and for her sole and separate use, benefit and behoof, and in no wise to be subject or liable to the debts, contracts or incumbrances of any husband, and at her death to the issue of her body, who may be then living. In case either of my daughters shall die without leaving issue of her body then liv-

ing, all the property above given and devised or bequeathed to her (except as hereinafter particularly specified) shall be equally divided among her surviving sisters, to and for their sole and separate use, benefit and behoof respectively, for and during the term of their natural lives respectively, precisely in all respects as the original share or portion above devised and bequeathed to them respectively, and at their several and respective deaths, to the issue of their bodies who may be then living. In all contingencies which may arise under this will, the issue of a deceased daughter, if any such, shall represent the parent and take the share which the parent would have been entitled to if living. In case either of my daughters shall die in my lifetime, without leaving issue living at the time of my decease, the share or portion above devised and bequeathed to her shall fall into the general residue of my estate, and augment ratably the shares or portions of my surviving children, the number of shares or portions in that case being less."

The said testator died some time in the year 1862, leaving of force his said last will and testament, and seized and possessed of a large real and personal estate. The said will was duly admitted to probate. On the 11th day of December, 1863, the qualified executors divided the real estate among the five daughters of testator, pursuant to the direction of his said will. In said division there was allotted to the said Jemima Harrison the tract or parcel of land described in the complaint herein. Jemima Harrison departed this life in the year 1865, without leaving issue of her body then living.

On the 10th day of September, 1869, John R. Cook and Sarah Cook, his wife, commenced their action in the Court of Equity for said county, against Lucy A. Mobley, R. A. Buchanan and Rebecca Buchanan, his wife, and Regina Gadsden, for partition of the "Harrison tract" of land. To this action the plaintiffs herein were not made parties, though *in esse* and within the jurisdiction of the court. Under a decree made in the said cause, the "Harrison tract" was sold by the sheriff of said county, on the first Monday in December, 1869, to Lucy A. Mobley. She complied with the terms of the sale, received a conveyance, and the sale was confirmed by the court. By

various legal transfers, the title to said lands came to Martha L. C. Desportes, who, on the 3d day of October, 1883, for valuable consideration, conveyed the said lands to Ulysse G. Desportes, the defendant herein, by deed, with general warranty.    Under this deed the said defendant entered into the possession of the said premises, and has ever since remained in the possession thereof, using the said lands as his own, and receiving and enjoying the rents, issues and profits derived therefrom.

Regina Gadsden, the mother of the plaintiffs herein, died on the 23d day of February, 1891, and the present action was commenced on the 25th day of April, 1891.    The rental value of the said lands is $400 per annum.    The parties claim through a common source, to wit: Osmund Woodward, deceased.    If, therefore, the sale under the decree in Cook *v.* Mobley passed a good and valid title in fee to the purchaser, then the defendant, Ulysse G. Desportes, would undoubtedly prevail in this action, for his paper title is complete and perfect.    So, the main question for consideration is, what estate did Mrs. Harrison take in the land devised to her under the will of her father?

It is contended for the defendant, Ulysse G. Desportes, that she took a fee conditional at common law, by force of the rule in Shelley's case, that the limitation "to the lawful issue of her body" served only to enlarge the estate devised to her to a fee conditioned at common law, and did not create a remainder to the issue as purchasers.    On the other hand, it is contended that the rule in Shelley's case does not apply, and that Mrs. Harrison took an estate for life only, with contingent remainder to her issue.    The contention of the defendant, Ulysse G. Desportes, cannot, in my opinion, prevail.    I do not think that the rule in Shelley's case applies to the devise in question.    After a careful study of the will of testator and the words employed, in the light of well established principles of law, the intention of the testator seems clear.    He did not intend that the issue of Jemima Harrison should take the estate in remainder absolutely and at all events, but only on a contingency—that of their surviving her; neither did he intend that the surviving sisters should take the estate absolutely and at all events, but only on a contingency—that of Jemima Harrison's dying with-

out leaving issue living at the time of her death.    It is clear to my mind, that the remainders created by the will of Osmund Woodward, deceased, are contingent and not vested remainders. A contingent remainder, says Mr. Blackstone, is "an estate in remainder limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event."    This definition is fulfilled when the devise in question is carefully considered.    The limitation here is not to the issue generally as a class, but to such as should be living at the time of the death of the daughters.    The persons who are to take on the death of the daughters are uncertain.

I, therefore, hold that Jemima Harrison took a life estate in the lands devised to her, with contingent remainder to the lawful issue of her body living at the time of her death, and in case of her death without leaving lawful issue then living, over to her surviving sisters.    That on the death of Jemima Harrison, without leaving lawful issue of her body then living, her sister, Regina Gadsden, took, under the will of her father, a life estate in one undivided fourth part of said lands, with a contingent remainder to the lawful issue of her body living at the time of her death; it being provided by said will that in case of the death of either of the testator's daughters, "without leaving issue of her body then living," all property devised and bequeathed to such daughter should be equally divided among her surviving sisters, subject to the same limitations and restrictions as were imposed by the testator on their original shares or portions.    That the plaintiffs, on the death of Jemima Harrison, acquired an interest as contingent remaindermen in said lands.    That this interest of the plaintiffs in said lands existed at the time of the commencement of the action of Cook and wife *v.* Mobley *et al.*, for partition, and at the time of the sale, under the decree made therein, and was such an interest as could not be defeated by proceedings to which they were not parties.    Such being the case, on the death of Regina Gadsden the fee in one undivided one-fourth of the land sold under said decree vested absolutely in the plaintiffs, and they are entitled to recover the same from the defendant, Ulysse G. Desportes.

It is true, that questions of this kind are often, if not always,

involved in difficulty and uncertainty, and that the tenor of
our own discussions seem, at first view, antagonistic and con-
flicting.    But the result of my investigation has been to satisfy
my mind that the supposed conflict between our own cases is
more seeming than real.    I feel sure that the conclusions above
stated are fully sustained by the following authorities from our
own court: *Faber* v. *Police*, 10 S. C., 376; *McIntyre* v. *McIntyre*,
16 *Id.*, 290; *McCorkle* v. *Black*, 7 Rich. Eq., 407; *Mendenhall* v.
*Mower*, 16 S. C., 303; *Moseley* v. *Hankinson*, 22 *Id.*, 323; *Thomas*
v. *Poole*, 19 *Id.*, 323; *Leroy* v. *City Council*, 20 *Id.*, 71; *Farr* v.
*Gilreath*, 23 *Id.*, 502; *Covar* v. *Cantelou*, 25 *Id.*, 35.

This brings us to the question of betterments.    Whether or
not the defendant, Ulysse G. Desportes, is entitled to recover
for improvements put upon said lands by him, if any, depends
upon two questions of fact:    (1) Did he believe at the time of
his purchase that the title he was purchasing was a good title
in fee?    And (2) did the changes made by him in the condition
of the property, if any, make the property permanently better
and more valuable?

In *Templeton* v. *Lowry*, 22 S. C., 389, it was held, that whe-
ther the improving claimant supposed or believed he had a
good title, is a question of fact, and that in determining this
question, his knowledge of facts, which in law would render
his title defective, is only a circumstance to be considered, but
does not in itself show that he did not suppose his title to be a
good title in fee.    And in this case it was also held that the
improving claimant might recover for improvements made
after learning of the defect as well as for those made before, if
he believed his title good when he bought the property.

In estimating the value of improvements, actual value, not
the cost, is the rule, as I understand it.    In the case of *Lumb* v.
*Pinckney*, 21 S. C., 479 our court, in discussing the claim of the
improving claimant under the Betterment Act, say: "The true
idea is, that both parties should be protected according to their
respective rights and interests."    Thus, the Betterment Act
attempts, by giving the improving claimant, not the costs of
the improvements, but such amount only as they may, in the
judgment of the peers of both parties, increase the value of

the premises. The burden is upon the improving claimant to establish his claim specifically, and to show the value of his improvements, without basing the estimate upon their cost.

A careful review of the testimony bearing upon the issue, when considered in the light of the law, satisfies me that the defendant, Ulysse G. Desportes, believed at the time he purchased the "Harrison tract," that the title he was purchasing was a good title in fee. The other question of fact is much more doubtful and difficult. The claim for betterments is set up in the answer of the defendant, Ulysse G. Desportes, as allowed by the act of 1885 (19 Stat., 343). The second section of this act provides that, "if the verdict or decree shall be for the plaintiff in such action, the jury or judge, who may render the same, may at the same time render a decree or verdict for the defendant for so much money as the lands and tenements are so made better, after deducting the amount of damages, if any, recovered by the plaintiff in such action, and the lands and tenements as recovered shall be held to respond to such judgment for the defendant."

Now, as we have seen, it is not the value of the improvements themselves, nor their original cost, which the court is to consider, but the increased value of the land in consequence of the improvements so made—*all* improvements so made. In estimating the changes by which the land affected is made better and more valuable, the erection of buildings upon the land, additions to buildings, draining of swamps and clearing of woodland, may be considered; I am satisfied, however, that only such change in bettering the land as were made by the improving claimant after his purchase should be considered, and not those made previously by others; I am aware that everywhere great favor is shown to the improving claimant, who acts in good faith and enhances the value of the land. He ought not to lose what he has expended in making the property permanently better and more valuable, if the increased value be equal to the outlay; but while this is so, respect must at the same time be had to the rights and interests of the party whose lands have been improved without his consent and di-

rection—he must not be made to pay for more than his lands have been made better.

The testimony bearing upon this issue is, to my mind, very unsatisfactory. Much of it is irrelevant, while other portions of it are vague and hypothetical. Under this state of the case, I find it impossible to say with any degree of certainty to what amount this property has been permanently bettered and made more valuable by the improving claimant. Justice and equity demand that this issue of fact should be submitted to a jury, with leave to the parties to introduce such evidence as they may be advised. The plaintiffs are entitled, by way of damages, to one-fourth of the rents for the year 1891. From the evidence I find that the rents for the year 1891 amounted to the sum of $408, and that the share of the plaintiffs would amount to the sum of $102. This sum should be set off against the amount which may be found by the jury for improvements.

The rights of the other contingent remaindermen who are made parties to the action have not attached; therefore, I cannot determine any matter as to them. They must bide their time, with all their rights preserved; I think, however, that they are not properly before the court in these proceedings. Whether they are necessarily parties, cannot affect the results, so far as the other parties are concerned; and in the view I take of the case it is useless now to consider.

It is, therefore, ordered, adjudged and decreed, that the plaintiffs recover from the defendant, Ulysse G. Desportes, the possession of one undivided one-fourth part of the tract or parcel of land described in the complaint herein, known as the "Harrison tract," together with $102 damages, for withholding the same from the plaintiffs. That a writ in partition do issue out of and under the seal of this court, in the usual form of words, directed to fit and proper persons as commissioners, commanding them to divide said lands among the parties according to their respective rights and interests. That the question as to the value of improvements put upon said lands by the defendant, Ulysse G. Desportes, be submitted to a jury upon an issue to be framed under the direction of the court, in which said defendant shall be the actor. That the damages

hereinbefore adjudged to the plaintiffs be set off against the amount, if any, found by the jury in favor of the defendant for improvements.    That the question as to costs be reserved until the trial of the issue of fact hereinbefore ordered; and that the parties have leave to apply for further orders at the foot of this decree.

The defendant, Ulysse G. Desportes, appealed, alleging error as follows:

I. For that his honor held that the contention of the defendant, Ulysse G. Desportes, [that Jemima Harrison took a fee, conditonal at common law, in the land devised to her under the will of her father, by force of the rule in Shelley's case,] cannot prevail.

II. For that his honor held that the rule in Shelley's case does not apply to the devise in question.

III. For that his honor held that the said "Jemima Harrison took a life estate in the lands devised to her, with contingent remainders to the lawful issue of her body living at the time of her death, and in case of her death without leaving lawful issue then living, over to her surviving sisters.    That on the death of Jemima Harrison without leaving lawful issue of her body then living, her sister, Regina Gadsden, took, under the will of her father, a life estate in one undivided fourth part of said lands, with a contingent remainder to the lawful issue of her body living at the time of her death."

IV. For that his honor held that on the death of Jemima Harrison, the plaintiffs acquired an interest as contingent remaindermen in said lands.    "That this interest of the plaintiffs in said·lands existed at the time of the commencement of the action of Cook and wife *v.* Mobley *et al.* for partition, and at the time of the sale, under the decree made therein, and was such an interest as could not be defeated by proceedings to which they were not parties."

V. For that his honor held that "on the death of Regina Gadsden, the fee in one undivided one-fourth of the land sold under said decree vested absolutely in the plaintiffs, and they are entitled to recover the same from the defendant, Ulysse G. Desportes."

VI. For that his honor held that the conclusions to which he had arrived in this case "are fully sustained by the following authorities from our own courts: *Faber* v. *Police*, 10 S. C., 376; *McIntyre* v. *McIntyre*, 16 *Id.*, 290; *McCorkle* v. *Black*, 7 Rich. Eq., 407; *Mendenhall* v. *Mower*, 16 S. C., 303; *Moseley* v. *Hankinson*, 22 *Id.*, 323; *Thomas* v. *Poole*, 19 *Id.*, 323; *LeRoy v. City Council*, 20 *Id.*, 71; *Farr* v. *Gilreath*, 23 *Id.*, 502; *Covar* v. *Cantelou*, 25 *Id.*, 35."

VII. For that his honor held that, in considering the matter of betterments, "only such changes bettering the land as were made by the improving claimant after his purchase should be considered, and not those made previously by others;" whereas, his honor should have held that if the *"others"* so making improvements, were predecessors or grantors of the claimant, he was entitled to the benefit of all the improvements made by them.

VIII. For that his honor adjudged "that the plaintiffs recover from the defendant, Ulysse G. Desportes, the possession of one undivided one-fourth part of the tract or parcel of land described in the complaint herein, known as the 'Harrison tract,' together with one hundred and two dollars damages, for withholding the same from the plaintiffs."

IX. For that his honor directed that said land be partitioned between the plaintiffs and the defendants; and that the damages hereinbefore adjudged to the plaintiffs be set off against the amount, if any, found in favor of the defendant, for improvements.

*Messrs. McDonald, Douglass & Obear*, for appellant.

*Messrs. Ragsdale & Ragsdale*, for plaintiff.

*Messrs. Buchanan & Hanahan*, for the other defendants.

April 18, 1893.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   The facts of this case are so fully and clearly stated in the Circuit decree, which should be

incorporated in the report of the case, that we do not deem it necessary to recapitulate them here. Indeed, we might well rest our conclusion upon the reasoning employed and authorities cited by his honor, Judge Izlar; but in deference to the earnestness with which this appeal has been pressed by the counsel for appellants, we will not content ourselves with a simple affirmance of the Circuit decree.

It is very obvious that the controlling question in this case is as to the proper construction of the fourth clause of the will of the testator, Osmund Woodward, under which all parties claim. That question depends largely, if not entirely, upon the question, whether the rule in Shelley's case applies in the construction of this will. It will be observed that the devise is "to each of my daughters," naming them, "for and during the term of her natural life, to and for her sole and separate use, benefit and behoof, and in no wise to be subject or liable to the debts, contracts or encumbrances of any husband, and at her death to the issue of her body, who may be then living." The further provision is, that "in case either of my daughters shall die without leaving issue of her body then living," all the property previously given to her "shall be equally divided among her surviving sisters, to and for their sole and separate use, benefit and behoof respectively, for and during the term of their natural lives respectively, precisely in all respects as the original share or portion above devised and bequeathed to them respectively, and at their several and respective deaths, to the issue of their bodies who may be then living."

The land in question (being the tract which had been allotted to Jemima Harrison, one of the daughters, by the executors under the terms of the eleventh clause of the will), upon her death in 1865, "without leaving issue of her body then living," became divisible, in equal shares, amongst her four surviving sisters, of whom Regina Gadsden, the mother of plaintiffs, was one; and the practical inquiry is, what was the nature of the estate which she took in her undivided one-fourth part of said land? Did she take a fee conditional, which, by the birth of issue, had become absolute, or did she take an estate for life, with remainder to the issue of her body (the plaintiffs) who

were living at the time of her death? If the former, then the property passed, under the sale made in the proceedings for partition of the Harrison tract, through various intermediate conveyances, to the appellant Desportes; but if the latter, then, upon the death of Regina Gadsden in 1891, the title passed to the plaintiffs, who, though *in esse* at the time, were not parties to the proceedings for partition.

It may be conceded, for the purposes of this case, that if the language of this devise had been to Regina Gadsden, and at her death to the issue of her body, with nothing more, then the rule in Shelley's case would have applied, unless there were other controlling circumstances, hereafter to be adverted to, to prevent such a result. But in this case there is something more. Here the words are not simply to the issue of her body, but to the issue of her body *"who may be then living,"* which, it seems to us, negatives an intent that the issue should take in indefinite succession, and, on the contrary, indicates an intent that *certain* issue, not susceptible of designation by name, and, therefore, described as a class—"who may be then living"—should take as purchasers. These words unquestionably show that it was not the intent that the issue generally should take, but, on the contrary, only such of the issue as might then be living, which would be equivalent to saying such issue as might then be surviving. If, therefore, the intention was not to give the property to the issue generally who could take through their ancestor, but to certain persons who could bring themselves within the terms of the devise descriptive of the class, they must take as purchasers, and not through their ancestor. These views are fully supported by the authorities cited in the Circuit decree, especially the case of *McCorkle* v. *Black*, 7 Rich. Eq., 407, which seems to be directly in point.

Counsel for appellant contends that the words "then living" have no effect upon the previous word "issue," and in support of his contention cites the case of *Hay* v. *Hay*, 3 Rich. Eq., 387, quoting certain language used by Johnston, Ch., in his Circuit decree. But he overlooks two important considerations: 1st. The language of the will there under consideration is very different from that found in the will which

we are called upon to construe. There the devise was to S. B. "and the heirs of her body," and should she "die without living issue of her body, then" over, &c. Here, however, the language of the devise to the daughter is, "for and during the term of her natural life, * * * and at her death to the issue of her body who may be *then* living." Passing by the fact, that in the former case there was no distinct devise for life, while here there is, what we wish to call attention to, is the fact, that in *Hay* v. *Hay*, the little but important word "then" is wanting, while here it is found. While, therefore, there was some ground to contend that the phrase, "die without living issue," meant no more than the phrase, "die without issue," and that the interposition of the word "living" was meaningless, and could have no effect in confining the word "issue" to any particular class of issue, yet there would be no ground for such a contention here, where the word "then" necessarily confines the general word issue to a particular class of issue, to wit: those who might be living at the time of the death of the person named as the life tenant. 2d. It appears, moreover, that upon the reargument of that case (*Hay* v. *Hay*, 4 Rich. Eq., 378), that although Chancellor Johnston still adhered to his view as to the effect, or, rather, want of effect, of the word "living," his view was distinctly repudiated by the other three chancellors.

We may add another reason why the rule in Shelley's case cannot apply to this devise. Here the estate given to the daughter is an equitable estate, while that given to the issue is a legal estate. The devise is not merely to the sole and separate use of the daughter, but by the codicil to the will trustees are appointed to preserve such separate estate. When, therefore, the life estate of Jemima Harrison fell in, Regina Gadsden took an equitable estate, while her issue took legal estates. Where this is the case, it is well settled that the rule in Shelley's case does not apply. *Holbrook* v. *Gaillard*, Riley Ch., 174; *Austin* v. *Payne*, 8 Rich. Eq., 9; *Burnett* v. *Burnett*, 17 S. C., 550. It will be observed that the estate of Regina Gadsden vested in 1865, prior to the adoption of the present Constitution.

As to the second, third and fourth positions taken by counsel for appellant in his argument here, we do not find that the questions there discussed were either presented to, considered or decided by the Circuit Judge, nor do we find any exception raising such questions. But we may add, that we do not think that either of these positions could be sustained, even if they were properly before us. If, as we have held, Regina Gadsden took only a life estate, with remainder to the plaintiffs as her issue living at the time of her death, nothing that she did in her lifetime could affect the legal rights of the remaindermen, and no order made by the court in the proceedings for partition, to which these plaintiffs were not parties, although they were then susceptible of being made parties, can be allowed to impair their rights. As to the fourth position, it is now too late to raise any such question.

It only remains to inquire whether there was any error in the Circuit decree as to the matter of betterments. The Circuit Judge having allowed the defendants' claim for betterments, so far as the alleged improvements were made after he acquired title, and there being no exception to or appeal from that portion of the decree, the plaintiffs cannot now make the question, which they have raised in the argument here for the first time, as to whether the appellant can make any claim for betterments at all. The only question, therefore, which we can consider is that raised by the appellant in his grounds of appeal, namely, whether there was error in confining his claim to such improvements as he had put upon the land after he acquired title. It seems to us that the view taken by the Circuit Judge is fully sustained by the terms of the act. See act of 1885, 19 Stat., 353, where the provision is that in an action for the recovery of lands, &c., "the *defendant who may have made* improvements or betterments on such land," believing at the time "*he makes* such improvements," &c., shall be allowed to set up a claim for so much as the land has been increased in value by the improvements "*so made.*" And in another act upon the same subject, passed on the same day (act of 1885, 19 Stat., 432), the language used is "the improvements put thereon in good faith *by the defendant.*"

The words which we have italicized in the foregoing extracts from the statutes show very clearly that the view adopted by the Circuit Judge was correct.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.