12661

HOWARD v. BRIGHT *ET AL.*

(148 S. E., 188)

*Messrs. Hicks & Johnston,* and *David W. Smoak,* for appellants,

*Mr. J. D. Lanford,* for respondent,

May 13, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

Some years ago Robert Curry died, leaving of force his will, as follows:

"(1) I, Robert Curry of the State and County Afforsaid Dos give all my real Estate To my Wiffe and and Seven Children (2) The Roal estate mention above Each Child Shall have his Equel portion laid off to them as they become off age (3) This Real Estate Shall be to their heirs as their deaths (4) The Said Jane Curry is to have the house and the land around it to the amount off a Childs part (5) at the death of the said Jane Curry her portion Shall go to the remaining heirs Equelly (6) after all in debtiness is paid my personal property shall be Equelly divided between my Wiffe and heirs if there be any left (7) I Constitute and appoint Jane Curry The Executor of this will, of personall property of wich She Shall opperate uppon of wich I shall own at at my disiese (8) Whereof I the said Robbert Curry

Have hereunt set my hand and and seal this Ethe Eleventh day July in the Eighteen hundred and ninty two.

his<br>
"Robbert X Curry."<br>
mark

After Curry's death the land was divided, and four of the children sold their shares, which finally became vested in S. W. Howard. He died intestate, and the plaintiff, his widow, brought a proceeding to sell this land in aid of assets. At the sale of the defendant C. G. Bright bid in the land for $5,000, but afterwards refused to comply with his bid on the ground that the children of Robert Curry could not give a fee-simple title, whereupon the plaintiff brought this action to compel compliance, making some of the grandchildren and other heirs of Robert Curry parties defendant. The grandchildren and other defendant heirs claimed a fee in the property.

The Master found that the children of Robert Curry owned the fee, and that his grandchildren have no interest in the land; and recommended that Bright be ordered to comply with his bid.

Upon exception to the Master's report, taken by certain heirs of Robert Curry, his Honor, Judge Bonham, affirmed the report by a decree filed October 5, 1927. From this decree the Curry heirs appeal to this Court.

The only question involved in the appeal is: What estate did the children of Robert Curry take in their respective one-eighth interests under his will? The appellants contend that they took only life interest, the word "heirs," wherever it appears in the will, being equivalent to the word "children"; the respondents contend that they took a fee simple, the word "heirs" in the will having its ordinary legal signification.

In construing a will the Court will always endeavor to ascertain the intention of the testator, looking to the entire instrument for that purpose, and will give effect to such intention unless it is inconsistent with some well-settled rule of law. *First National Bank v. Hutson,* 142 S. C., 239, 140 S. E., 596. What then was the intention of the testator in this case?

Apparently Robert Curry was unable to write his name, as his signature to the will is made by means of his mark. The transcript states that the will was drawn by a country notary public, and his education also appears to have been of the most rudimentary type. In spite of the crudeness of the will, including the lack of punctuation, however, it is possible to divide it, with reasonable certainty of correctness, into its several constituent clauses, and, following the arrangement of appellant's counsel, we have numbered these clauses by inserting numerals in the parentheses in the body of the will.

In so far as the disposition of the testator's property is concerned, the will may be divided into two parts, one devising the real estate and the other bequeathing the personalty. As to the real estate, it is clear that the testator, after deciding upon his wife and seven children as the objects of his bounty, had two purposes in mind: First, the designation of the quantity or shares of land to be taken by each devisee; and, second, the fixing of the estate of each devisee in the land so allotted to him or her. In pursuance of his first purpose, he divided the land into eight equal shares, one for his wife and one for each of his seven children. In pursuance of the second purpose, he divided the devisees into two classes, the wife constituting one and the children the other.

As to the wife's portion, he made it clear that she was to have only a life interest therein, her portion going to "the (his) remaining heirs Equelly" after her death. As to the children's portions, he said that each child shall have his equal portion laid off when he becomes of age, and that "this real estate shall be to their heirs as (at) their deaths." It seems to us that in making the distinction between the estate or interest devised to his wife and that devised to his children, the testator intended to say in effect that, while the wife's portion should go to her only for her life, the children's portions should go to them in fee, and that he made the distinction by providing that at the children's death their portions should go to *their* heirs, while his wife's portion at her

death should go to *his* heirs. The language of clause 3 with reference to the children's shares is such as might readily suggest itself to a layman with a smattering of law, such as the notary public who wrote the will appears to have been, for the "clinching" of such a distinction.

Appellant's counsel contend that the words "remaining" and "Equelly" used with the word "heirs" in the fifth clause indicate that the testator intended the word "heirs" in that clause to mean "children," and that the word "heirs" in the third clause should therefore be held to mean "children" also. We do not think that this contention can be maintained. In *Davenport v. Eskew,* 69 S. C., 292, 48 S. E., 223, 104 Am. St. Rep., 798, this Court construed the following language: "The above named land to be held by Matilda Roberts during her natural life, then to be distributed equally between her remaining heirs." The Court said:

"The much discussed question, whether the words 'to be distributed equally' and similar expressions, are sufficient to take a devise or conveyance out of the rule in Shelley's case, must be regarded finally settled in this State by the unanimous judgment of this Court in *Simms v. Buist,* 52 S. C., 561, 30 S. E., 400. This view is in accord with the highest authority elsewhere. * * * 3 Jarman on Wills, 144 and 150 (5th American Ed.); *Jesson v. Wright,* 10 Eng. Ruling Cases, 714; 2 Washburn on Real Property, 652.

"The appellant insists, however, that if the words, 'then to be distributed equally,' standing alone, would not be sufficient to take the deed out of the rule in Shelley's case, that the expression 'remaining,' should be held to mean surviving, and so construed, further limits the signification of the word 'heirs.'

"It does not avail the plaintiff to give the words 'remaining heirs' the same meaning as *surviving heirs.* When a grant or devise is to surviving children or surviving issue, as distinguished from children or issue generally, it is manifest that the intention is to take a particular class from a general

class—to include those children or issue who survive and exclude those who do not. The word *surviving* in such case has a qualifying effect, and the rule laid down in *McCorkle v. Black,* 7 Rich. Eq., 407, and *Gadsden v. Desportes,* 39 S. C., 131, 17 S. E., 706, is applicable. But there can be no heirs except surviving or remaining heirs, and hence these words have no effect when used, as in this case, in connection with the general term heirs."

As to the words under consideration, the language construed in the *Davenport case* is practically identical with that in the fifth clause of Robert Curry's will. It is true that case involved the application of the rule in Shelley's case, but we think that the reasoning illuminates the case at bar.

If the word "heirs" in the third and fifth clauses should be taken to mean "children" and the word "remaining" in the fifth clause to mean "living" or "surviving," as contended for by the appellants, then each of Robert Curry's children who should survive Jane Curry would take, as a cotenant, a fee-simple interest in her one-eighth of the real estate after her death and only a life interest in the one-eighth given to him as his immediate portion under the terms of the will. Assuming, as was evidently assumed by the testator, that more than one child would survive the widow, and adopting the appellants' view as to one-eighth devised immediately to each child, each of such survivors would take a fee in remainder in a tract of land much smaller than that in which he took only a life interest immediately under the same will.

While provisions in a will, though thus peculiar in effect, will be enforced if the language is clear, still when the language is such as to require construction, and the construction that would result in such peculiarity can only be made through the substitution of a word for another actually used by the testator, then such peculiarity may be taken into consideration in determining the testator's intention in the use of the word.

On the other hand, if the word "heirs" in both the third clause and the fifth clause shall be held to have its usual legal signification, then the peculiarity does not exist and the surviving children take the fee both in the portions of land laid off immediately for them and in the remainder in the portion laid off for Jane Curry.

It is contended by counsel for appellants that the sixth clause of the will should read: "After all my indebtedness is paid, my personal property, if there be any left, shall be equally divided between my wife and heirs"—the expression "if there be any left" being thus transposed from its position at the end of the clause. Conceding this reading to be correct, and conceding also that in this clause the word "heirs" might understandably be construed to mean "children," we do not think that the inference arising therefrom and thereby is of sufficient weight to overcome the other inference properly drawn from the testator's language as to his intention in the disposition of his real estate. *Du Rant v. Reames*, 141 S. C., 13, 28, 139 S. E., 203, 207.

It is to be observed that in his will the testator used the several words "child," "children," and "heirs," which is some indication that he had in mind a distinction in meaning, and we are not prepared to say, from an examination of the whole will, that he did not understand the legal significance of these words as used and did not intend them to be given such significance. As was well said by the Circuit Judge: "Who shall say the testator did not know the difference in a legal sense between children and heirs? Having begun to use the words children and child, why did not he continue that use and say, 'this real estate shall be to their *children* at their deaths?' Instead he said, 'shall be to their *heirs* at their deaths'; the apt words to convey the fee. He gives to his wife a child's part in the real estate and at her death it shall go to the remaining 'heirs.' Why not to the remaining children?"

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.