14979

LUCAS v. SHUMPERT *ET AL.*

(6 S. E. (2d), 17)

April, 1938.

*Messrs. Martin & Sturkie,* for appellant,

*Messrs. George Bell Timmerman* and *George Bell Timmerman, Jr.,* for respondents,

December 12, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

Some time during the year 1888, John F. Shumpert departed this life leaving of force his last will and testament, Paragraph three of which reads as follows:

"I give and bequeath to my loving wife, Mary Shumpert, during her natural life all of my real estate containing four hundred and forty acres (more or less) adjoining lands of Dempsey Jones on the West; George Shumpert on the Northeast; John Kyzer on the East; Jacob Shumpert on the South and others, and is the place where I now reside and is known as part of the Huffman tract of land. After the death of my loving wife, Mary Shumpert, I give and bequeath the said named tract of land to my four daughters, viz.: Ann Lucinda King, Sarah Ann E. Berry; Alvinia Rodella Shumpert, and Eliza Julia Shumpert, during their natural lives and after their deaths to their bodily issue if any surviving them, and said tract of land to be divided in the following manner: Mrs. Sarah Ann E. Berry to have one hundred and ten acres (with certain boundaries), Mrs. Annie Lucinda King to have one hundred and ten acres (with certain boundaries). My other two daughters, Alvinia Rodella Shumpert and Eliza Julia Shumpert, to have the homestead tract containing two hundred and twenty acres, more or less, and to belong to them both equally and jointly and not to be divided or sold so long as either of them are unmarried, both to have equal privilege on said place until divided or sold."

Mrs. Mary Shumpert, the widow of the testator, has been dead many years. Three daughters named in the above paragraph of the will, Ann Lucinda King, Alvinia Rodella Shumpert, and Eliza Julia Shumpert, died several years ago without having had bodily issue. Sarah Ann E. Berry was the only one of the four daughters named in the will who died leaving bodily issue, namely: the plaintiff, Mary Berry Lucas, and her brother, the defendant, Boyd Berry.

The only issue submitted to the Circuit Court, and the only question presented here on appeal is, did the four daughters named in Paragraph three of the will of John F. Shumpert take a fee-simple conditional estate in the lands therein devised, with the reversion to the estate of the testator upon failure of issue born; or did they take a fee conditional with a limitation over by way of executory devise to their bodily issue surviving them, thereby entitling the appellant and the defendant, Boyd Berry, the only survivors, exclusively to all of the land?

The contention of the respondents is that each of the four daughters of the testator took fee-conditional estates in the respective parcels of land allotted to them, and that neither the appellant nor her brother took anything under the will, except the fee to the parcel alloted to their mother, Sarah Ann E. Berry. The Circuit Court sustained this position, and held that under a proper construction of the will each daughter was given a fee conditional in the respective tracts of land alloted to them.

The appellant's position is, that by using the word "surviving" in the phrase "if any surviving them," the testator intended to give the whole tract to such person or persons as should constitute the surviving bodily issue of all or any one of said daughters, provided there be any surviving to fill such description, and that since Mrs. Sarah Ann E. Berry was the only one of the daughters leaving bodily issue surviving her, that this issue—her daughter and her son—took the full title to the entire 440 acres of land.

The provision in Paragraph three of the will which we are called upon to construe reads: "After the death of my loving wife, Mary Shumpert, I give and bequeath the said named tract of land to my four daughters, viz.: Ann Lucinda King, Sarah Ann E. Berry, Alvinia Rodella Shumpert, and Eliza Julia Shumpert, during their natural lives and after their deaths to their bodily issue if any surviving them." And then follows a particular division and allotment

which gives 110 acres to each of the daughters, with a description of each tract.

As disclosed by the foregoing clause of the will, we think it clear that it was the plan and design of the testator to devise to each daughter an interest in a definite and particular tract of land, viz: 110 acres to each as described by him; and, under the rule in *Shelley's case,* each daughter took a fee conditional in the tract allotted to her. The whole of the paragraph when considered together very plainly manifests this definite scheme of division among the daughters.

The gift is to the several devisees for life, and after their death, as construed by us, to their respective bodily issue. The limitation standing alone and unqualified, creates a fee simple conditional under the rule in *Shelley's case.* *First Carolinas Joint Stock Land Bank v. Ford,* 177 S. C., 40, 180 S. E., 562; *Federal Land Bank v. Wells,* 172 S. C., 1, 172 S. E., 707; *Cureton v. Little,* 119 S. C., 31, 111 S. E., 803; *Strother v. Folk,* 123 S. C., 127, 115 S. E., 605; *Farmer v. Corley,* 103 S. C., 202, 88 S. E., 23; *Baxter v. Early,* 131 S. C., 374, 127 S. E., 607.

It will be observed that the clause, "during their natural lives and after their deaths to their bodily issue", is immediately followed by the words, "if any surviving them". And the question arises, what effect, if any, have these superadded words upon the fee conditional previously created.

Where an estate in fee conditional by operation of the rule in Shelley's case is devised by clear and unequivocal terms, superadded words of doubtful import must be rejected, and superadded words in the same or subsequent clauses, unless they raise an irresistible inference that testator's intent was to enlarge, cut down, or destroy the fee conditional created, cannot be given an effect which would result in such alteration of the fee conditional. *Cureton v. Little, supra; Adams v. Verner,* 102 S. C., 7, 86 S. E., 211.

In *Cureton v. Little, supra,* it was said [119 S. C., 31, 111 S. E., 804] :

"The following principles are well established in this State in the construction of wills : 'When a gift is made in one clause of a will in clear and unequivocal terms, the quantity or quality of the estate given should not be cut down or qualified by words of doubtful import found in a subsequent clause. To have that effect, *the subsequent words should be at least as clear in expressing that intention as the words in which the interest is given.'* " (Emphasis added.)

See also *Walker v. Alverson,* 87 S. C., 55, 60, 68 S. E., 966, 968, 30 L. R. A. (N. S.), 115

It is likewise true that if there are explanatory or ■■ qualifying expressions superadded to technical words designating the remaindermen, from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the rule in Shelley's case will not apply. *Rowe v. Moore,* 89 S. C., 561, 72 S. E., 468. For instance, the rule will not become active if the superadded words denote a different species of heirs from those described by the first clause, thus showing an intention to break the ordinary line of descent from the first taker. *Bethea v. Bethea,* 48 S. C., 440, 26 S. E., 716.

We do not think that the superadded words, "if any ■■ surviving them," impair or destroy the technical signification of the words, "bodily issue," which precede them, or affect the generality of the expression. As used in a will, designating beneficiaries, the word "issue" is ordinarily a word of limitation and not of purchase, and has for its primary or general meaning "heirs of the body," or lineal descendants generally. *Thomson v. Russell,* 131 S. C., 529, 128 S. E., 421; *Rembert v. Vetoe,* 89 S. C., 198, 71 S. E., 959, 2 A. L. R., 918. And there is always a strong legal presumption that these words, or equivalent expressions, have been used in their technical sense as denoting the whole of the indefinite line of inheritable succession. They

will not otherwise be construed unless it manifestly appears that such was the intent of the testator.

In the case at bar there is no limitation over, express or implied. The superadded words, "if any surviving them," are not sufficient to show an intent on the part of the testator to cut down or destroy the fee conditional previously granted. It would not have this effect even if we construed the expression to mean his "surviving issue."

In *Guy v. Osborne,* 91 S. C., 291, 74 S. E., 617, the devise was "To my nephew Samuel Blair, during his natural life, I give and bequeath in trust, and at his decease, I give and bequeath to his surviving issue, * * * my tract of land (describing the lands). But should my said nephew die without any *surviving issue of* his body, * * * the said lands * * * herein bequeathed to his children * * * to descend," etc. It was held that "the testator clearly indicated that he meant to use the words 'his surviving issue' in the sense of his surviving children." But the Court said:

"The court has recently held that the word 'issue' used without qualification will be generally construed to have the same import as the words 'heirs of the body.' *Rembert v. Vetoe,* 89 S. C., 198, 71 S. E., 959 [2 A. L. R., 918]. Therefore, if the words 'surviving issue' stood without further qualification, all who were heirs of the body of Samuel Blair [the life tenant] would take at his death in the proportion fixed by the statute of distribution."

Applying this construction to the devise in the case at bar, it is seen that the words, "if any surviving them," standing without further qualification, are not used in a restrictive sense, but merely describe the general class which comes within the description of "bodily issue." There are no other words to indicate that their "bodily issue" was used in a non-technical sense as a word of purchase.

When a grant or devise is to surviving children or surviving issue as distinguished from children or issue generally, it is manifest that the intention is to

take a particular class from a general class—to include those children or the issue who survive, and exclude these who do not. The word "surviving" in such case has a qualifying effect, and the rule laid down in *McCorkle v. Black,* 7 Rich. Eq., 407, and *Gadsden v. Desportes,* 39 S. C., 131, 17 S. E., 706, is applicable. But there can be no heirs or bodily issue except surviving bodily issue, and hence these words have no effect when, as in this case,. they refer to issue generally. *Howard v. Bright,* 150 S. C., 358, 148 S. E., 188; *Davenport v. Eskew,* 69 S. C., 292, 48 S. E., 223, 104 Am. St. Rep., 798.

Under our construction of the will, in harmony with the foregoing authorities, the four daughters of the testator took fee-simple conditional estates in the respective tracts of land allotted to them.. Since the daughters other than Sarah Ann E. Berry died without having had issue, the property set off to them reverted to the estate of the testator. *Dukes v. Shuler,* 185 S. C., 303, 194 S. E., 817.

For an exceptionally fine discussion of fee-simple conditional estates, see annotation in 114 A. L. R., 602, wherein practically every South Carolina case bearing upon the subject is collected.

Under this construction, the plaintiff and her brother, the defendant, Boyd Berry, take no interest under the will in the 330 acres devised to their three aunts, because they are not the surviving bodily issue of the three aunts. It follows that the plaintiff and the defendant, Boyd Berry, together with the respondents take under the statute of descent and distributions as heirs at law and next of kin of the testator.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.