17930

Thomas Manning BETHEA, Jr., Respondent, v. Sallie C. BASS,
C. G. Bass, Lula B. Manning and Sara B. Gardner,
Appellants

(126 S. E. (2d) 354)

*Messrs. G. G. McLaurin, Jr.,* and *W. B. Hawkins,* of
Dillon, *for Appellants,*

*J. B. Gibson, Esq.,* of Dillon, *for Respondent,*

*Messrs. G. G. McLaurin, Jr.,* and *W. B. Hawkins,* of Dil-
lon, *for Appellants, in reply,*

June 12, 1962.

LEGGE, Acting Justice.

In this action for recovery of a tract of land in Dillon County the facts are not in dispute, and the main controversy is with regard to the construction of the deed next referred to, which is the common source from which the contending parties derive their claims of title.

In June, 1919, Sarah Anne Bethea conveyed to her son Thomas M. Bethea, for the recited consideration of her love and affection for him, certain real estate, including the tract in question containing some one hundred two acres and known as the "Lane Place". In 1925, Thomas M. Bethea gave to the Bank of Latta a mortgage of this tract as security for his note in the sum of five thousand five hundred forty-three & 38/100 ($5,543.38) dollars. The bank thereafter assigned the note and mortgage to Howard H. Bass; and in 1927 Bass brought action to foreclose the mortgage. In that action the defendant Thomas M. Bethea did not answer and was adjudged in default. Pursuant to the decree of foreclosure the property was sold in November, 1929, and bid in by Bass for five hundred ($500.00) dollars; and it was thereafter conveyed to him by Master's deed in March, 1931.

Thomas M. Bethea had one child, Thomas M. Bethea, Jr., who was born on August 20, 1918, and who was not a party to the foreclosure proceedings.

Howard H. Bass went into possession under the Master's deed and continued to own and possess the property until his death in May, 1954, when his interest in the property passed to his wife, Sallie C. Bass, his son, C. G. Bass, and his daughters, Lula B. Manning and Sara B. Gardner, who have been in possession since his death, and who are the appellants in this action.

Thomas M. Bethea died on November 29, 1959, and his son, Thomas M. Bethea, Jr. thereupon for the first time notified appellants of his claim of ownership, and demanded possession. Appellants refused to surrender possession, claiming that they owned the property in fee simple; and shortly thereafter he commenced this action.

In the deed from Sarah Anne Bethea to Thomas M. Bethea, the granting clause was "unto the said Thomas M. Bethea, for and during the term of his natural life". The *habendum* and subsequent clauses of the deed were as follows:

"To have and to hold all and singular the said premises before mentioned unto the said Thomas M. Bethea, for and during the term of his natural life, and at his death to his issue then living, taking *per stirpes,* to them their heirs and assigns forever.

"But if he leaves no issue surviving him, then to his brothers and sisters, their heirs and assigns forever. Subject, however, to the following express conditions:

"1. That the grantee herein shall pay all taxes upon any of the said property within described when due.

"2. That no timber, standing or fallen, on the country lands herein conveyed, shall, during the life of the said Thomas M. Bethea, be sold, nor shall any be cut during the same time, except for the use on said plantations, and ex-

cept further that in order, from time to time to bring additional land under cultivation, the timber on land desired to be cleared may be sold or cut off upon the express condition that such land shall be brought into cultivation within three years from either the date of sale or the date of the cutting of the timber thereon, whichever may be first in time.

"3. And upon the further express condition that the grantees herein shall, on or before October 15th, of each and every year during the life of the grantor, time being of the essence of this condition, pay to the said grantor nineteen hundred and eighty (1980) pounds of lint cotton, or middling grade, the same to be delivered to me, the said grantor, at my residence, at Latta, S. C., free of any charge.

"4. And on failure to perform and carry out all of said conditions at the time and in the manner stipulated, this conveyance shall determine and become void and the title to all of said property herein conveyed shall revert to the grantor and her heirs and they may enter and take possession of same.

"And I do bind myself, my heirs and executors, and administrators, to warrant and forever defend, all and singular the said premises unto the said Thomas M. Bethea, his heirs and assigns, against me and my heirs and all other persons lawfully claiming or to claim the same or any part thereof.

"Witness my hand and seal this .... day of June, in the year of our Lord one thousand nine hundred and nineteen in the one hundred and forty-third year of the Sovereignty and Independence of the United States of America".

Had the conveyance been simply "unto the said Thomas M. Bethea, for and during the term of his natural life, and at his death to his issue", the rule in *Shelley's case,* which was in force in this state when the deed was executed, would have applied. But the rule is not applicable if, upon consideration of the deed as a whole, it is manifest that the word "issue" was used not as a word of limitation, but as descriptive of a class of persons who are

to take in their own right from the grantor. *Hutto v. Ray,* 192 S. C. 364, 6 S. E. (2d) 747; *Woodle v. Tilghman,* 234 S. C. 123, 107 S. E. (2d) 4.

The superadded expressions in the deed before us, from which the lower court concluded that the word "issue" in the *habendum* had been used as a word of purchase and not of limitation, are these:

1. The restriction of the remainder to the life tenant's surviving issue;

2. The provision that such issue should take in fee *per stirpes;*

3. The limitation over in the event that the life tenant should leave no issue surviving him;

4. The requirement that the "grantee" pay taxes;

5. The restriction upon the cutting or sale of timber during the life tenancy; and

6. The requirement that the "grantees" pay to the grantor annually throughout her lifetime nineteen hundred and eighty pounds of cotton.

The effect, upon the applicability of the rule in *Shelley's case,* of provision for remainder, upon the life tenant's death, to his "surviving heirs" or "surviving issue", has been many times considered by the courts of this state.

In *Whitworth v. Stuckey,* 1 Rich. Eq. (18 S. C. Eq.) 404, a devise to the testator's son 'for and during his natural life; at his death to the lawful issue of his body; and if he should die without lawful issue living at the time of his death," over, was held to pass a fee conditional.

In *Hull v. Hull,* 2 Strob. Eq. (21 S. C. Eq.) 174, it was held that the testator's daughter took a fee conditional under a devise to her for life and "upon her death, then the property is to go to the heirs of her body, if any, or should she die without issue," over.

In *McLure v. Young,* 3 Rich. Eq. (24 S. C. Eq.) 559, the devise was to the testator's daughter for life "and at her

death to her lineal descendants; and in case she should die without lineal descendants (one or more) living at the time of her death, then it is my will that the whole of said real estate revert to my estate and be disposed of as hereinafter directed." The Court of Errors held that the daughter took a life estate, with remainder to her surviving lineal descendants as purchasers.

*McIntyre v. McIntyre,* 16 S. C. 290, held that in a devise to one for life with remainder to his issue, the addition, after the word "issue", of the words "and their heirs forever" sufficiently evinced the intention that the word "issue" should be taken to indicate a new stock of inheritance, and therefore took the case out of the operation of the rule in *Shelley's case.*

In *Boykin v. Ancrum,* 28 S. C. 486, 6 S. E. 305, 13 Am. St. Rep. 698, the court, following *McIntyre v. McIntyre, supra,* held that where the remainder was to the life tenant's "lawful issue", the addition to the words "absolutely and in fee simple" sufficed to take the devise out of the rule; and added, as another reason for so holding, that there was a limitation over in the event that the life tenant should die "leaving no lawful issue at the time of his decease."

In *Gadsden v. Desportes,* 39 S. C. 131, 17 S. E. 706, the court, construing a devise to one for life "and at her death to the issue of her body who may be then living," held that restriction of "issue" to those who should survive the life tenant unquestionably showed that the testator intended such issue to take as purchasers and not by descent.

In *Davenport v. Eskew,* 69 S. C. 292, 48 S. E. 223, 104 Am. St. Rep. 798, the deed, which was to the grantor's wife, was an ordinary conveyance in fee simple with general warranty, except for the following provision at the conclusion of the first pragraph describing and granting the land: "The above-named land to be held by Matilda Roberts during her natural life, then to be distributed equally between her remaining heirs." It was contended, among other things,

that the expression "remaining" should be construed to mean "surviving", and that the rule in *Shelley's case* was therefore not applicable. But the court held otherwise. Mr. Justice Woods, who wrote the opinion, pointed out that since there can be no heirs except "surviving" or "remaining" heirs, the quoted words could have no effect when used, as they were in that case, in connection with the general term "heirs". But he said also, in language not necessary for the decision there, but of interest in our consideration of the question now under discussion: "When a grant or devise is to surviving children or surviving issue, as distinguished from children or issue generally, it is manifest that the intention is to take a particular class from a general class —to include those children or issue who survive and exclude those who do not. The word 'surviving' in such case has a qualifying effect, and the rule laid down in *McCorkle v. Black*, 7 Rich. Eq. 407, and *Gadsden v. Desportes*, 39 S. C. 131, 17 S. E. 706, is applicable."

In *Surles v. McLaurin,* 94 S. C. 308, 77 S. E. 944, a devise to the testator's son for life and then to the heirs of his body, "but should he leave no such heirs", over, was held to pass a fee conditional upon the birth of issue.

In *Browning v. Hoover,* 95 S. C. 32, 78 S. E. 521, Mr. Justice Woods, speaking for a unanimous court, declared that the rule in *Shelley's case* applied to a deed "to F. W. Browning for and during the term of his natural life and at his death to his heirs living at that time, in fee."

In *Strother v. Folk,* 123 S. C. 127, 115 S. E. 605, there was a devise to the testator's daughter, to "be and remain to her during her natural life and to descend to the heirs of her body, and if she, the said Julia Ann Long, should die without issue or children of her body the said property to return to my son, Moses Long." The court, *en banc,* divided seven to six, held that the rule in *Shelley's case* applied.

In *Antley v. Antley,* 132 S. C. 306, 128 S. E. 31, where the *habendum* was to one for life and after her death to her

issue in fee *per stirpes,* and there followed a proviso that should the grantee die leaving no bodily issue surviving at the time of her death, the property should go to others, the circuit decree, adopted by this court, held that the proviso attempted to mount a condition upon a fee conditional already granted, and was therefore ineffectual, and that the grantee took a fee conditional upon the birth of issue.

In *Campbell v. Williams,* 171 S. C. 279, 172 S. E. 142, the circuit decree, which was adopted by this court on appeal, held that where the *habendum* was to one for life with remainder to the issue of her body "who shall be alive at the time of her death", the superaddition of the quoted words prevented the application of the rule in *Shelley's case.* It is to be noted that in that case there was, in the deed in question, other language sufficient of itself to render the rule inapplicable, the recital at the beginning of the deed clearly indicating that by "issue" the grantor meant "children".

In *Lucas v. Shumpert,* 192 S. C. 208, 6 S. E. (2d) 17, the testator had devised all of his land, containing 440 acres, to his wife for life and after her death to his four daughters "during their natural lives and after their deaths to their bodily issue if any surviving them, said tract of land to be divided in the following manner:" each of his two married daughters to have 110 acres (with certain boundaries) and his two unmarried daughters to have the "homestead tract" of 220 acres, "to belong to them both equally and jointly and not to be divided or sold so long as either of them are unmarried." After the death of the testator's widow three of the daughters died without having issue; the fourth died leaving two children, Mary Berry Lucas (who was the plaintiff) and Boyd Berry (who was a defendant). The action involved construction of the will; both sides agreed that each of the testator's daughters had taken a fee conditional; and the real question was whether under the will Mary Berry Lucas and her brother, Boyd Berry, were entitled to the whole tract of 440 acres or only to the 110 acres devised to their mother. To quote from the opinion:

"The only issue submitted to the Circuit Court, and the only question presented here on appeal is, Did the four daughters named in paragraph three of the will of John F. Shumpert take a fee simple conditional estate in the lands therein devised, with the reversion to the estate of the testator upon failure of issue born; or did they take a fee conditional with a limitation over by way of executory devise to their bodily issue surviving them, thereby entitling the appellant and the defendant, Boyd Berry, the only survivors, exclusively to all of the land?

"The contention of the respondents is that each of the four daughters of the testator took fee conditional estates in the respective parcels of land allotted to them, and that neither the appellant nor her brother took anything under the will, except the fee to the parcel allotted to their mother, Sarah Ann E. Berry. The circuit court sustained this position, and held that under a proper construction of the will each daughter was given a fee conditional in the respective tracts of land allotted to them.

"The appellant's position is, that by using the word 'surviving' in the phrase 'if any surviving them', the testator intended to give the whole tract to such person or persons as should constitute the surviving bodily issue of all or any one of said daughters, provided there be any surviving to fill such description, and that since Mrs. Sarah Ann E. Berry was the only one of the daughters leaving bodily issue surviving her, that this issue—her daughter and her son— took the full title to the entire 440 acres of land".

The court construed the will as having given to the four daughters estates in fee conditional in the tracts allotted to them respectively; held that since the daughters other than Sarah Ann E. Berry had died without having had issue, the property set off to them had reverted to the estate of the testator; and concluded by saying:

"Under this construction, the plaintiff and her brother, the defendant, Boyd Berry, take no interest under the will

in the 330 acres devised to their three aunts, because they are not the surviving bodily issue of the three aunts. It follows that the plaintiff and the defendant, Boyd Berry, together with the respondents take under the statute of descent and distributions as heirs at law and next of kin of the testator."

The foregoing extended discussion of *Lucas v. Shumpert* has seemed necessary in order to bring into proper perspective the statement in the opinion in that case to the effect that the words "if any surviving them" were not of themselves sufficient to indicate that the words "bodily issue", which preceded them, were used as words of purchase. It is to be noted, in addition to what we have already said, that as used in the devise under review in that case, the words "surviving them" were of doubtful import, suggesting on the one hand that upon the death of all of the daughters the issue then living of any of them would take the entire property, and on the other hand that such issue would take only the property that had been devised to his or her or their parent.

It is to be noted also that, in stressing the point that the words "if any surviving them" were not used in a restrictive sense, the court called attention to the fact that the devise contained no limitation over, either express or implied, thereby suggesting, as it seems to us, that had there been a limitation over it would have had the effect, in connection with the words restricting "issue" to those surviving the testator's daughters, of rescuing the devise from the rule in *Shelley's case*. This conclusion is strengthened by the fact that the court went on to say that where a grant or devise is to surviving issue as distinguished from issue generally "it is manifest that the intention is to take a particular class from a general class—to include those children or the issue who survive, and exclude those who do not, * * *" in which case "the rule laid down in *McCorkle v. Black*, 7 Rich. Eq. 407, and *Gadsden v. Desportes*, 39 S. C. 131, 17 S. E. 706, is applicable" In both the *McCorkle case* and the *Gadsden*

*case* there was a limitation over, as there is in the case at bar.

In *Sims v. Clayton,* 193 S. C. 98, 7 S. E. (2d) 724, the *habendum* was to two persons "for the full term of their natural life or lives, and at the death of either without issue of the body the survivor to take the premises for his or her enjoyment during the term of his or her life, and at the death of the survivor to the heirs of their body or the heirs of the body of either leaving heirs, their heirs and assigns forever." The court, pointing out that the instrument was a deed and therefore subject to stricter rules of construction than a will, *Clark v. Neves,* 76 S. C. 484, 57 S. E. 614, 12 L. R. A., N. S., 298, held that the superadded words "their heirs and assigns forever" were ineffectual, when following a limitation in remainder to "heirs of the body", as when following such a limitation to heirs generally, to indicate intention to create a new stock of inheritance so as to prevent the operation of the rule in *Shelley's case.*

In *Woodle v. Tilghman, supra,* the devise was to one "for life only and then unto the lawful issue of her body, and if she should die without children", then over. The controversy there centered upon the contention that because of the use of the word "children", the word "issue" in the preceding clause should be construed as meaning "children" and not "issue" in the technical sense of that word. The court, rejecting that contention, held the superadded words insufficient to overcome the presumption that the word "issue" was used in its technical sense as denoting the whole of the indefinite line of inheritable succession. The precise point now under discussion was not involved.

*Smoak v. McClure,* 236 S. C. 548, 115 S. E. (2d) 55, was concerned with the construction of a deed in which the granting clause was "unto the said Ben Garris, his natural life time, then to [his] heirs or next of kin if he has no heirs", and the *habendum* was "unto the said Ben Garris, and his Heirs and Assigns forever." We held that the gran-

tee took a fee under the rule, the superadded words "next of kin" in the granting clause being insufficient to overcome the presumption that the word "heirs" was used in its usual technical sense.

The cases thus reviewed, though not altogether harmonious, would indicate that in attempting to ascertain in the grantor's intention our court, following the general rule, 47 Am. Jur., *Shelley's case,* Rule In, Section 17, has considered the word "issue" as weaker, *i. e.,* more readily susceptible of construction in a sense other than its technical one, than the word "heirs". They also suggest that a limitation to "surviving issue" may be taken as indicating an intention on the part of the grantor, by taking a particular class from a general class, to establish in such remaindermen a new stock of inheritance taking as purchasers, rather than a line of indefinite inheritable successsion taking by descent from the life tenant. In this connection it is noted, *Lucas v. Shumpert, supra,* that where there is a limitation over, following the limitation in remainder to issue surviving the life tenant, that fact may lend weight to a construction against the application of the rule. We think that those decisions warranted the holding by the lower court that the restriction of issue to those surviving the life tenant, coupled with the limitation over, rendered the rule in *Shelley's case* inapplicable. We affirm the judgment on that ground and therefore need not comment in detail upon the effect of the superadded words *"per stirpes,* to them their heirs and assigns forever,"* or of the requirement that the life tenant pay taxes, or of the restriction upon the cutting or sale of timber during the life tenant's life, and the condition that the "grantees" deliver to the grantor each year during her life nineteen hundred and eighty pounds of cotton. But we agree with the circuit judge that although none of these provisions, standing alone, would require the holding that the word "issue" was used as one of purchase, they lent support to that conclusion when considered together in connection with the provision for only a life estate to Thomas M.

Bethea in the granting clause and the restriction of the remainder to his surviving issue in the *habendum.*

*Holman v. Wesner,* 67 S. C. 307, 45 S. E. 206; *Baxter v. Early,* 131 S. C. 374, 127 S. E. 607; *Antley v. Antley, supra,* and *Davis v. Strauss,* 173 S. C. 99, 174 S. E. 908, upon which appellants rely, are distinguishable from the case at bar for the reason that in each of them the direct gift in remainder was to the issue of the life tenant generally.

The grant in the case at bar not being within the rule in *Shelley's case,* Thomas M. Bethea, Sr. took a life estate only, and the respondent, Thomas M. Bethea, Jr., a contingent remainder, which became vested upon his father's death in 1959. The mortgage from Thomas M. Bethea, Sr., in 1925, though purporting to include the fee, covered only his life estate, for that was all that he had; and the Master's deed in the foreclosure could convey no more. *Griggs v. Griggs,* 199 S. C. 295, 19 S. E. (2d) 477. Nor did the length of possession under that deed bar respondent's claim, for his cause of action did not accrue until his father's death. *Crotwell v. Whitney,* 229 S. C. 213, 92 S. E. (2d) 473.

Affirmed.

TAYLOR, C. J., and MOSS and BUSSEY, JJ., concur.